Joel James JOHNSON, Plaintiff-Appellant-Cross-Respondent,

Bryana HARKINS, Plaintiff-Co-Appellant-Cross-Respondent,††

v.

James R. BLACKBURN, Elaine M. Blackburn, and Germantown Mutual Insurance Company, Defendants-Respondents-Cross-Appellants,†

Diane MULLINS, Stoney Mullins, DEF Insurance Company, Marylyn Smith, and GHI Insurance Company, Defendants.

Joel James JOHNSON, as Special Administrator of the Estate of Joel James Johnson, Jr., Plaintiff-Appellant-Cross-Respondent,

v.

James R. BLACKBURN, Elaine M. Blackburn, and Germantown Mutual Insurance Company, Defendants-Respondents-Cross-Appellants,†

Diane MULLINS, Stoney Mullins, DEF Insurance Company, Marylyn Smith, and GHI Insurance Company, Defendants.

Court of Appeals

*No. 97–1414. Submitted on briefs April 10, 1998.—Decided May 27, 1998.*

---

††Petition to cross review granted.
†Petition to review granted.

(Also reported in 582 N.W.2d 488.)

On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *Jerald P. Donohue* of *Donohue, Sharpe & Casper, S.C.* of Fond du Lac.

On behalf of the plaintiff-co-appellant-cross-respondent, the cause was submitted on the briefs of *Timothy J. Aiken* and *James C. Gallanis, of Aiken & Scopter, S.C.* of Milwaukee.

On behalf of the defendants-respondents-cross-appellants, the cause was submitted on the briefs of

*Elizabeth V. Pavlick*, of *Sager, Pavlick, Wirtz & Fry, S.C.* of Fond du Lac.

A nonparty amicus curiae brief of Civil Trial Counsel of Wisconsin and Wisconsin Insurance Alliance was filed by *Thomas A. Lorenson of Colwin & Lorenson, S.C.* of Fond du Lac.

Before Brown, Nettesheim and Anderson, JJ.

NETTESHEIM, J. Joel James Johnson, Jr., a minor, was killed and Bryana Harkins, also a minor, was seriously injured in a fire which occurred at rental property owned by James R. and Elaine M. Blackburn. In these consolidated actions, Joel's estate and Bryana seek damages resulting from the fire. In addition, Joel's father, Joel James Johnson, seeks damages for Joel's wrongful death. For purposes of this opinion, when we refer to the children's claims, we also include the wrongful death claim of Joel's father.

At summary judgment, the trial court dismissed the children's claims against the Blackburns and their insurer, Germantown Mutual Insurance Company. The court ruled that the children and their mother, who were guests of the tenants, were trespassers at the time of the fire and, as such, the Blackburns did not owe them a duty of reasonable care under *Antoniewicz v. Reszczynski*, 70 Wis. 2d 836, 236 N.W.2d 1 (1975).

The children appeal. We reverse. We hold that the children, as guests of the tenants, were not trespassers even though their occupancy of the premises was contrary to the lease and without the knowledge of the Blackburns. We also hold that extending potential liability to the Blackburns under the facts of this case does not violate public policy. We reinstate the chil-

265

dren's claims and the wrongful death claim. We remand for further proceedings.

Although the trial court ultimately ruled in favor of the Blackburns and dismissed the children's complaints, the court made a separate ruling in favor of the children. The court ruled that the Blackburns were negligent per se for their failure to place a smoke detector in the basement of the rental property in violation of § 101.645, STATS., which the court deemed a safety statute.[1] The Blackburns cross-appeal this ruling. We agree with the trial court that § 101.645 is a safety statute and that a violation of the statute constitutes negligence per se. However, we conclude that a material issue of fact exists as to whether the Blackburns violated the statute.

## FACTS AND PROCEDURAL BACKGROUND

In December 1994, Diane and Stoney Mullins entered into a written lease with the Blackburns whereby the Mullinses rented the lower-level apartment of a two-story house located in Waupun. The lease represented that four persons would reside on the premises. In keeping with this provision, Diane and Stoney resided on the premises with Diane's children, Richard Smith and Peggy Smith. Diane, Stoney and Peggy occupied the two bedrooms on the lower level while Richard used the basement of the house as his bedroom. The lease did not expressly refer to the basement area of the residence. However, this area was equipped with separate washer and dryer hookups, separate furnaces, separate water heaters and separate utility meters for each rental unit.

---

[1] The children also relied on an equivalent city of Waupun ordinance in support of their negligence per se claim.

On April 8, 1995, without the knowledge or consent of the Blackburns, Diane's daughter, Marylyn Smith and her three children, Charisse, age six, Joel, age four, and Bryana, age two, moved into the lower-level unit with the Mullinses. After that date, Richard and Joel occupied one of the bedrooms on the first floor, or lower level, of the residence. Peggy, Marylyn, Charisse and Bryana occupied and slept in the basement of the home.

Eighteen days later, during the nighttime hours of April 26, 1995, a fire occurred in the basement of the home. Both Joel and Bryana were sleeping in the basement at the time. Diane became aware of the fire upon hearing Bryana's screams. While Diane managed to rescue Bryana from the fire, she was unable to find Joel. As a result of the fire, Joel died of smoke inhalation and Bryana suffered severe burns.

Joel's father filed two actions as a result of Joel's death: one as special administrator of Joel's estate seeking compensation for Joel's pain and suffering; the other a survival action in his own right for Joel's wrongful death. The trial court consolidated these actions by an order dated August 18, 1995. These complaints named the Blackburns, the Mullinses and Marylyn Smith as defendants. The complaints alleged a common law negligence claim, stating that the Blackburns were "negligent . . . specifically, but not limited to, in failing to properly install and maintain smoke detectors in the home . . . ." The complaints did not specifically cite to § 101.645, STATS., or any other statute, ordinance or regulation in support of the negligence claim against the Blackburns. In addition, the complaints alleged that the Mullinses and Smith were "negligent . . . specifically, but not limited to, allowing . . . Joel . . . to sleep in the basement . . . which was in

violation of various state and local codes; and in allowing cigarette lighters, matches, and other incendiary materials to be left in the presence of the minor children . . . ."

On September 7, 1995, Bryana filed a motion to intervene in the action. The trial court granted her request on November 16, 1995. Bryana then filed a complaint on February 8, 1996. Bryana's complaint alleged negligence only against the Blackburns, claiming that they had failed to properly install smoke detectors in the home. As with the complaints pertaining to Joel, Bryana's complaint did not cite to § 101.645, STATS., or any other statute, ordinance or regulation in support of the negligence claim against the Blackburns.[2]

On December 4, 1995, the Blackburns filed a motion for summary judgment. The Blackburns argued that the children were trespassers because the basement was not intended for use by the tenants as a living area and because the Mullinses were not entitled to have guests for a period in excess of fourteen days without the Blackburns' consent. The lease signed by the Mullinses contained the following provision:

> Tenant may have guests residing temporarily in the Premises . . . if the number of guests is not excessive for the size of the facilities of the Premises. *No guest may remain for more than two weeks without the written consent of Landlord which will not be unreasonably withheld.* [Emphasis added.]

The Blackburns noted that the fire occurred on the eighteenth day of the children's stay at the Mullinses'

---

[2] Bryana's complaint also challenges the constitutionality of recent changes to Wisconsin's joint and several liability statute, § 895.045, STATS.

and that they had no knowledge that the children had taken up residence on the property. In addition, the Blackburns argued that the basement of the residence did not meet the local housing code requirements for a sleeping area and that any use of the basement as such was a violation of the code. The Blackburns argued that the only duty they owed to the children was to refrain from willfully, wantonly or recklessly inflicting injury on them. *See* WIS J I—CIVIL 8025; *Monsivais v. Winzenried*, 179 Wis. 2d 758, 764, 766, 508 N.W.2d 620, 624 (Ct. App. 1993).

The children responded with their own motions for summary judgment claiming that the Blackburns were negligent as a matter of law for failing to provide a smoke detector in the basement of the residence. In support they cited to the provisions of § 101.645, STATS., which speaks to the approval, installation and maintenance of smoke detectors in a dwelling. The children argued that this statute was a safety statute, that the Blackburns had violated the statute, and that such violation constituted negligence per se. The Blackburns responded that the statute was not a safety statute and, even if it was, they had not violated the statute. They contended that the smoke detector which they had affixed to the ceiling of the open basement stairway complied with the statute.

The trial court ruled that § 101.645, STATS., was a safety statute and that the Blackburns had violated the statute. Therefore, the court determined that the Blackburns were negligent per se. However, the court also ruled that the children were trespassers under the lease. Since the Blackburns' negligence for violating the statute did not rise to the level of willful, wanton or reckless conduct under *Antoniewicz*, the court dismissed the complaints.

The children appeal the trial court's ruling that they were trespassers and the dismissal of their complaints. The Blackburns cross-appeal the ruling that § 101.645, STATS., is a safety statute and that they violated the statute. We will recite additional facts as they pertain to the issues on appeal. In addition to the parties' briefs, we have received an amicus curiae brief from Civil Trial Counsel of Wisconsin and the Wisconsin Insurance Alliance.

## DISCUSSION

■ We independently decide whether summary judgment is appropriate without giving deference to the trial court's ruling. *See Schaller v. Marine Nat'l Bank,* 131 Wis. 2d 389, 394, 388 N.W.2d 645, 648 (Ct. App. 1986). We nevertheless value a trial court's decision on such a question. *See M & I First Nat'l Bank v. Episcopal Homes Management, Inc.,* 195 Wis. 2d 485, 497, 536 N.W.2d 175, 182 (Ct. App. 1995).

■ Summary judgment is appropriate in cases where there is no genuine issue of material fact and the moving party has established entitlement to judgment as a matter of law. *See id.* at 497, 536 N.W.2d at 182. If a dispute of any material fact exists, or if the material presented on the motion is subject to conflicting factual interpretations or inferences, summary judgment must be denied. *See State Bank v. Elsen,* 128 Wis. 2d 508, 512, 383 N.W.2d 916, 918 (Ct. App. 1986).

### *The Children's Appeal*

On appeal, the children argue that the trial court erroneously concluded, as a matter of law, that they were trespassers at the time of the fire. The children

contend that they were not trespassers because the Mullinses, as tenants and lawful possessors of the property, had given express consent to their presence on the property.

A landowner owes a duty of reasonable care to all persons who come upon property with the consent of the owner. *See Antoniewicz,* 70 Wis. 2d at 857, 236 N.W.2d at 11. However, as to a trespasser, the owner has a duty to refrain from willful and intentional injury. *See id.* at 842, 236 N.W.2d at 4. A trespasser is "a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." *Id.* at 843, 236 N.W.2d at 4 (quoting RESTATEMENT (SECOND) OF TORTS § 329, at 171 (1964)). In its written conclusions of law, the trial court found that "[b]ecause the tenants had no lawful authority to allow people to sleep in the basement nor to allow additional people to move into the apartment, at the time of the fire . . . Joel [ ] and Bryana [ ] were trespassers." As such, the court determined that the Blackburns did not owe the children a reasonable duty of care. The court therefore barred the children's claim against the Blackburns.

It is undisputed that the children and their mother had the Mullinses' express consent to be on the premises. Therefore, the issue on appeal is whether the Mullinses had the authority to consent to the children's presence on the premises including the basement. The Blackburns argue that the Mullinses had no such authority because: (1) the Mullinses' violations of certain terms in the lease caused them to lose their rights of possession; and (2) the Mullinses were not "possessors" of the basement such that they could grant

permission for the children to enter and remain there. We are unpersuaded.

We first address whether the Mullinses' status as "lawful possessors" of the leased premises was extinguished by their conceded violations of the terms of the lease. Section 704.01, STATS., provides that a lease is "an agreement, whether oral or written, for transfer of possession of real property, or both real and personal property, for a definite period of time." It is undisputed that the Mullinses were in lawful possession of the leased premises prior to the lease violations. According to the terms of the lease entered into by the Mullinses and the Blackburns, the Mullinses were given possession of the leased premises. The lease provides in relevant part:

POSSESSION: ABANDONMENT.

Landlord shall give Tenant possession of the Premises as provided herein. Tenant shall vacate the Premises and return all of Landlord's property promptly upon the expiration of this Lease, including any extension or renewal, or its termination in accordance with its terms or the law.

The Blackburns argue that the Mullinses' possessory rights as to the leased premises terminated when the provisions of the lease were violated. However, the Blackburns' position is not supported by either the terms of the lease or the law. That portion of the lease set forth above states that the tenant will return the property to the landlord only upon expiration or termination.

That portion of the lease governing breaches and termination provides:

> If this lease is for a term of one year or less, should Tenant neglect or fail to perform and observe any of the terms of this Lease, *Landlord shall give Tenant written notice of such breach requiring Tenant to remedy the breach or vacate the Premises on or before a date at least five days after the giving of such notice, and if Tenant fails to comply with such notice, Landlord may declare this tenancy terminated* .... If Tenant has been given such a notice and has remedied the breach or been permitted to remain on the Premises, and within one year of such previous breach, Tenant commits a similar breach, this Lease may be terminated if, before the breach has been remedied, Landlord gives notice to Tenant to vacate on or before a date at least 14 days after the giving of the notice.

Although the Mullinses were in violation of certain terms of the lease,[3] it is undisputed that the Blackburns had not given the Mullinses written notice of those breaches nor had they commenced a termination process. We say this with full appreciation that the Blackburns did not have knowledge of these violations.

---

[3] The Blackburns argue that the Mullinses breached the lease by (1) allowing the apartment to be occupied by other than the four people identified on the lease, (2) allowing an excessive number of guests given the size of the apartment, (3) permitting guests to stay for a period in excess of the fourteen days allowed under the terms of the lease, and (4) permitting those guests to sleep in the basement in violation of the Waupun Housing Code when the lease expressly states that tenants shall comply with local ordinances.

We note that the Mullinses dispute whether they actually committed certain of the alleged violations. Because we conclude that these alleged violations, whether they occurred or not, do not result in a loss of possessory rights until the lease is actually terminated, we need not reach this issue.

Nonetheless, according to the terms of the lease, the Mullinses remained lawful possessors of the premises and, as such, were entitled to consent to the presence of guests on the premises.

We note that the termination provisions of the Mullinses' lease mirror those set forth by statute. Wisconsin law affords the tenant a period of notice and opportunity to remedy prior to a termination of the tenancy for breach of a lease condition. Section 704.17(2)(b), STATS., provides in part:

> If a tenant under a lease for a term of one year or less, or a year-to-year tenant . . . breaches any covenant or condition of the tenant's lease, other than for payment of rent, the tenant's tenancy is terminated if the landlord gives the tenant a notice requiring the tenant to remedy the default or vacate the premises on or before a date at least 5 days after the giving of the notice, and if the tenant fails to comply with such notice.

Like the lease, the language of the statute indicates that the possessory interest represented by a tenancy in a rented property will not be terminated unless the landlord provides notice and an opportunity to remedy and the tenant fails to comply.

■

The lease and the statute clearly state that only if written notice is given to the tenant in accordance with § 704.21, STATS., is the tenant no longer entitled to possession or occupancy of the premises after the date of termination set forth in the notice. *See* § 704.17(4), STATS. We therefore reject the Blackburns' argument that the Mullinses' possessory interest in the leased premises was terminated upon breach of the terms of the lease.

Next, the Blackburns argue that even if the children were guests, they were trespassers with respect to the basement of the rental property because the basement was not included under the terms of the Mullinses' lease. We disagree. It is undisputed that both the Mullinses and the tenant occupying the upper level apartment had access to and use of the basement for storage and use of the utilities located there.[4] As such, the Mullinses had the authority to access the basement and the authority to permit the children's presence there. Although the children's extended stay was in violation of the terms of the lease, and although the use of the basement area for living quarters was in violation of the lease ordinance, we have already concluded that these developments did not change their status from guests to that of trespassers.[5]

We therefore reverse the trial court's grant of summary judgment to the Blackburns and the ensuing order dismissing the children's claims.

### The Blackburns' Cross-Appeal

On cross-appeal, the Blackburns challenge the trial court's ruling that § 101.645, STATS., is a safety statute. "Safety statutes are those legislative enact-

---

[4] The tenant of the upper unit had surrendered his key to the door which accessed the basement because he was not using the area. This does not alter the fact that both he and the Mullinses had tacit permission to use the basement area.

[5] Based on our conclusion that the children were not trespassers because they were invited onto the premises, we need not address the parties' arguments as to whether children of tender years may be trespassers. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938).

ments that are designed to protect a certain class of persons from a particular type of harm." *Grube v. Daun*, 210 Wis. 2d 682, 693–94, 563 N.W.2d 523, 528 (1997). The statute at issue in this case is § 101.645(3), which is part of the "one- and 2-family dwelling code." It provides in relevant part:

> REQUIREMENT. The owner of a dwelling shall install a functional smoke detector in the basement of the dwelling and on each floor level except the attic or storage area of each dwelling unit.

Section 101.645(3).

Whether § 101.645 is a "safety statute" such that a violation of its provisions constitutes negligence per se depends on the interpretation of a statute. It is therefore a question of law which we review without deference to the trial court. *See Grube*, 210 Wis. 2d at 693, 563 N.W.2d at 528.

At common law, a landlord owes the tenant and others on the premises with the tenant's consent a duty to exercise ordinary care. *See Maci v. State Farm Fire & Cas. Co.*, 105 Wis. 2d 710, 714, 314 N.W.2d 914, 917 (Ct. App. 1981). Whether a defendant's conduct satisfied that duty of care may be determined in several ways. *See Walker v. Bignell*, 100 Wis. 2d 256, 264, 301 N.W.2d 447, 452 (1981). The standard of conduct for a reasonable person may be (1) established by a legislative enactment or an administrative regulation which so provides, (2) adopted by the court from a legislative enactment or an administrative regulation which does not so provide, (3) established by judicial decision, or (4) applied to the facts of the case by the trial judge or the jury if there is no such enactment, regulation or

decision. *See id.* (citing RESTATEMENT (SECOND) OF TORTS § 285 (1965)).

When a standard of care is set by a safety statute, a violation may constitute negligence per se. *See id.* In order for a violation of a safety statute to constitute negligence per se, a plaintiff must demonstrate that:

> (1) the harm inflicted was the type the statute was designed to prevent; (2) the person injured was within the class of persons sought to be protected; and (3) there is some expression of legislative intent that the statute become a basis for the imposition of civil liability.

*Symes v. Milwaukee Mut. Ins. Co.*, 178 Wis. 2d 564, 573, 505 N.W.2d 143, 146 (Ct. App. 1993) (quoting *Tatur v. Solsrud*, 174 Wis. 2d 735, 743, 498 N.W.2d 232, 235 (1993)).

When considering whether § 101.645, STATS., is a safety statute, the trial court stated:

> [T]he plaintiffs and all residents or occupants, no matter how permanent or transitory, are within the class of people that are designed to be . . . benefited or protected by smoke alarms. . . . [Y]ou can look at the common sense and conclude that well, even for trespassers, they have the right to be promptly notified of fire to attend to their own safety, and they did not have that benefit obviously or allegedly in this case.

The Blackburns challenge this ruling. In support, they rely upon the supreme court's decision in *Grube.* There, the court concluded that § 144.76, STATS., 1993–94, governing hazardous waste management, is

not a safety statute.[6] *See Grube*, 210 Wis. 2d at 685, 563 N.W.2d at 524. In doing so, the court considered the legislature's declaration of public policy for hazardous waste management: "The legislature finds that hazardous wastes, when mismanaged, pose a substantial danger to the environment and public health and safety." *Id.* at 694, 563 N.W.2d at 528 (quoting § 144.60(2), STATS.). The court concluded that because the statute was "designed to protect the public in general rather than a certain class of persons," it was not a safety statute. *See id.*

The Blackburns liken the declaration of public policy in the hazardous waste management statute to the language set out in § 101.60, STATS., which states in part that "[t]he purpose of [the one- and 2-family dwelling code] is to establish statewide construction standards and inspection procedures for one- and 2-family dwellings and to promote the interstate uniformity in construction standards . . . ." Were we to limit our consideration to merely this analogy, we would likely agree with the Blackburns. However, other provisions of ch. 101, STATS., persuade us otherwise.

First, we note that the chapter in which § 101.645, STATS., is located is entitled "Regulation of Industry, Buildings and *Safety*." *See* ch. 101, STATS. (emphasis added). This title connotes that the legislature was addressing safety concerns in the chapter. Second, a related statute, § 101.64(8), STATS., governing the powers of the department of commerce, states that the department may study the code and other laws related to the construction of dwelling units to determine *"their*

---

[6] Chapter 144, STATS., was recodified by 1995 Wis. Act 227, § 1047, effective January 1, 1997.

*effectiveness upon the health, safety and welfare of the occupants.*" (Emphasis added.) This indicates that the statutes falling within the "one- and 2-family dwelling code" are aimed at protecting the safety of those persons who occupy such dwellings.

Moreover, common sense suggests that a statute which regulates the installation of smoke detectors in dwellings is aimed at protecting those residing there from being harmed by an undetected fire. *See Beacon Bowl, Inc. v. Wisconsin Elec. Power Co.*, 176 Wis. 2d 740, 769, 501 N.W.2d 788, 799 (1993) (employing a commonsense approach to determine the purpose of an administrative code provision requiring the trimming of trees which may interfere with ungrounded supply conductors).

The Blackburns, nonetheless, contend that the children and the harm they suffered were not within the purview of § 101.645, STATS., under the facts of this case. While the Blackburns concede that the purpose of the statute is to warn occupants of a fire, they argue that the statute does not extend to a situation in which small children are sleeping by themselves in a basement area not intended to be used for that purpose. They base this argument on the fact that other provisions of ch. 101, STATS., require a smoke detector in sleeping quarters. *See* § 101.145(3), STATS. Since they have not violated this specific statute, the Blackburns reason that the purpose of the more general statute is to warn occupants of other areas of the rental unit not devoted to sleeping quarters.

We reject the Blackburns' argument. We hold that the children were not removed from the protections provided by § 101.645, STATS., simply because they were using the basement as sleeping quarters at the time of the fire. If we were to agree that the purpose of

requiring a smoke detector in the basement is limited to protecting those in the upstairs living quarters, we would be excluding those persons injured by fire while in the basement doing laundry, arranging stored items or simply passing time. Such a result would be absurd and unreasonable and therefore should be avoided. *See State v. Pham*, 137 Wis. 2d 31, 34, 403 N.W.2d 35, 36 (1987) (statutes must be interpreted in a way that avoids absurd or unreasonable results).

Finally, the Blackburns contend that the legislature did not intend § 101.645, STATS., to be a basis for civil liability.[7] "Even where the law imposes a duty to protect a particular class of persons from a particular hazard, Wisconsin requires that there be some expression of legislative intent that the enactment was meant to serve as a basis for determining a standard of care that will support a negligence suit." *Johnson v. City of Darlington*, 160 Wis. 2d 418, 424, 466 N.W.2d 233, 235 (Ct. App. 1991). In the absence of a direct expression of legislative intent to create a basis for civil liability, intent may be inferred from the language and the surroundings of the statute. *See Symes*, 178 Wis. 2d at 573, 505 N.W.2d at 146.

This court has previously determined that the safe place statute, § 101.02(15), STATS.—which falls under the same statutory chapter as § 101.645, STATS.—is intended to impose civil liability. *See Nordeen v. Hammerlund*, 132 Wis. 2d 164, 168–69, 389 N.W.2d 828, 830 (Ct. App. 1986). In doing so, the *Nordeen* court relied upon our supreme court's statement in *Walker*, 100 Wis. 2d at 271, 301 N.W.2d at 455–56, that "the

---

[7] We note that a large portion of the Blackburns' argument relating to this issue is contained in its response to the children's appeal. We nevertheless consider their arguments in the context of the cross-appeal.

requisite intent may be supplied by necessary implication from the language of the statute." *Nordeen*, 132 Wis. 2d at 168–69, 389 N.W.2d at 830. Although the statute at issue in *Walker* did not contain an express statement of intent to impose civil liability, the court nevertheless found such intent based on the statute's clear expression of concern for safety. *See Walker*, 100 Wis. 2d at 271, 301 N.W.2d at 455–56.

In considering the safe place statute in light of *Walker*, the *Nordeen* court concluded that "the language found in the statutes and the Administrative Code in this case provides a[ ] . . . plain expression of legislative intent to protect construction site frequenters and therefore imposes civil liability." *Nordeen*, 132 Wis. 2d at 169, 389 N.W.2d at 830. We see no persuasive reason why § 101.645, STATS., which falls under the same chapter and seeks to protect the safety of a certain class of people, should not similarly be held to impose civil liability.

Our conclusion is supported by the provision of § 101.65(1r), STATS., relating to an owner's liability for a contractor's failure to abide by the dwelling code. This statute sets forth the information which a municipality must provide to an owner seeking a building permit when the owner intends to hire a contractor to perform the work and the contractor is not insured or bonded. The statute provides that "[t]he owner may be held liable for any bodily injury to or death of others . . . that arises out of the work performed under the building permit or that is caused by any negligence by the contractor . . . ." Section 101.65(1r)(a). The statute further provides, "The owner may not be able to collect from the contractor damages for any loss sustained by the owner because of a violation by the contractor of the one- and 2-family dwelling code . . . because of any

bodily injury to or death of others . . . that arises out of the work performed under the building permit or . . . that is caused by any negligence by the contractor . . . ." *Id.* at para. (1r)(b).

Although these provisions pertain to the owner's liability for a contractor's violation of the code, it nevertheless demonstrates that the legislature envisioned that an owner could be held vicariously liable to a tenant for violations of the building permit and that such liability could not be recouped from the contractor. If that is the law as to when an owner hires a contractor to perform work under the dwelling code, then it must surely be so in a situation such as this where the owner has not used a contractor.

We therefore conclude that the children in this case are within the class of people which § 101.645, STATS., seeks to protect and that the harm sustained is that which the statute seeks to prevent. We also conclude that the statute provides a basis for civil liability. As such, the statute is a safety statute, a violation of which is negligence per se.

The Blackburns also challenge the trial court's further determination that they violated the statute and they were therefore negligent per se. The Blackburns ask not only that we reverse this determination, but also that we hold, as a matter of law, that they did not violate the statute.

The statute provides that an owner "shall install a functional smoke detector in the basement of the dwelling and on each floor level except the attic or storage area of each dwelling unit." Section 101.645(3), STATS. The smoke detector in this case was located in the ceiling over the open basement stairway. A city of Waupun fire inspector testifying at a deposition opined

that this location was satisfactory and that it would have passed his inspection. We conclude that a genuine issue of material fact exists as to whether the Blackburns' placement of the smoke detector complied with the requirements of the statute. While the fire inspector's testimony supports the Blackburns' argument, it does not mean that a fact finder would accept it. We deem this to be a triable issue.

## Public Policy

Civil Trial Counsel of Wisconsin and the Wisconsin Insurance Alliance, as amicus curiae, contend that extending potential liability to an owner such as the Blackburns under the facts of this case violates public policy. The amicus cite to the factors which bear upon such an inquiry: (1) the harm sustained is too remote from the alleged negligence; (2) the harm is too wholly out of proportion to the culpability of the negligent tortfeasor; (3) it is too extraordinary that the negligence caused the harm; (4) the allowance of recovery would place too unreasonable a burden upon potential tortfeasors; (5) the allowance of recovery would invite fraudulent claims; and (6) the allowance of recovery enters a field that has no sensible or just stopping point. *See Rockweit v. Senecal*, 197 Wis. 2d 409, 426, 541 N.W.2d 742, 750 (1995).

The amicus' argument, however, is very much linked to the contention that the children were trespassers under the lease and relevant law. We have already rejected that argument. In addition, the amicus' public policy argument asks not only that we place limitations placed on liability under the common law, *but also that we limit the reach of a safety statute duly enacted by the legislature.* The separation of powers doctrine suggests that we should tread cautiously in

such a setting so that we do not substitute our judgment for that of the legislature.

Even apart from any separation of powers considerations, we hold that extending potential liability to the Blackburns under the facts of this case does not violate public policy. Although we do not condone the practice, we do not find it startling that tenants sometimes permit additional occupants to stay beyond the designated time limit stated in the lease and to allow such persons to live in areas of the rental property not intended for that purpose. The very fact that the lease addresses the owners' concern regarding the number of allowable occupants and the duration of a guest's permissible stay establishes that this is so. As such, we do not see any public policy reasons for excluding such persons from the reasonable care standard of *Antoniewicz* or the protection of § 101.645, STATS.

## CONCLUSION

We hold that § 101.645, STATS., is a safety statute. We also hold that the children were not trespassers at the time of the fire and, therefore, the Blackburns owed the children a duty of reasonable care under *Antoniewicz*. We further hold that public policy does not forbid the imposition of liability on the Blackburns. We reverse the order dismissing the complaints. We remand for a trial on the question of whether the Blackburns violated the statute and on all other issues raised by the parties' pleadings.

Costs are not awarded to either party.

*By the Court.*—Order reversed and cause remanded.