Joel James JOHNSON, Plaintiff-Appellant-Cross-Respondent,

Bryana HARKINS, Plaintiff-Co-Appellant-Cross-Respondent-Cross Petitioner,

v.

James R. BLACKBURN, Elaine M. Blackburn, and Germantown Mutual Insurance Company, Defendants-Respondents-Cross-Appellants-Petitioners,

Diane MULLINS, Stoney Mullins, DEF Insurance Company, Marylyn Smith, and GHI Insurance Company, Defendants.

Joel James JOHNSON, as Special Administrator of the Estate of Joel James Johnson, Jr., Plaintiff-Appellant-Cross-Respondent,

v.

James R. BLACKBURN, Elaine M. Blackburn, and Germantown Mutual Insurance Company, Defendants-Respondents-Cross-Appellants-Petitioners,

Diane MULLINS, Stoney Mullins, DEF Insurance Company, Marylyn Smith, and GHI Insurance Company, Defendants.

Supreme Court

*No. 97–1414. Oral argument March 4, 1999.—Decided June 30, 1999.*

249

(Also reported in 595 N.W.2d 676.)

For the defendants-respondents-cross appellants-petitioners there were briefs by *Elizabeth V. Pavlick* and *Sager, Pavlick, Wirtz & Fry, S.C.*, Fond du Lac and oral argument by *Elizabeth V. Pavlick*.

For the plaintiff-appellant-cross respondent there was a brief by *Jerald P. Donohue* and *Donohue, Sharpe & Casper, S.C.*, Fond du Lac and oral argument by *Jerald P. Donohue*.

For the plaintiff-co-appellant-cross respondent-cross-petitioner, there were briefs by *Timothy J. Aiken, James C. Gallanis* and *Aiken & Scoptur, S.C.*, Milwaukee and oral argument by *Timothy J. Aiken*.

Amicus curie brief was filed by *Thomas A. Lorenson* and *Kubasta, Rathjen, Bickford & Lorenson*,

Wautoma, for the Civil Trial Counsel of Wisconsin and Wisconsin Insurance Alliance.

¶ 1.

SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This is a review of a published decision of the court of appeals, *Johnson v. Blackburn*, 220 Wis. 2d 260, 582 N.W.2d 488 (Ct. App. 1998). The Circuit Court for Fond du Lac County, Peter L. Grimm, Judge, dismissed the complaints. The court of appeals reinstated the complaints and remanded the causes for further proceedings. The case arises out of a fire that killed four-year-old Joel James Johnson, Jr., and seriously injured his one-year-old sister, Bryana Harkins.

¶ 2. There are two issues that emerge in this case: (1) Were the two injured children trespassers? (2) Did the location of the smoke detector violate the statutory requirement? The circuit court granted summary judgment to James R. and Elaine M. Blackburn (the landlords) and their insurer, Germantown Mutual Insurance Company, on the claims of Joel James Johnson, Bryana Harkins and the Estate of Joel James Johnson, Jr.[1] (the plaintiffs), holding that Joel Jr. and Bryana were trespassers to whom the landlords owed no duty of ordinary care. The court of appeals concluded that as a matter of law, Joel Jr. and Bryana were not trespassers and remanded the cause for further proceedings on the negligence claims.

¶ 3. The circuit court held that the plaintiffs' negligence per se claim against the landlords was

---

[1] Joel James Johnson also filed a separate action as special administrator of the Estate of Joel James Johnson, Jr. against the same defendants seeking compensation for his son's pain and suffering. The two suits were consolidated.

established as a matter of law because the landlords violated Wis. Stat. § 101.645 (1993–94)[2] by failing to provide a smoke detector in the basement. The circuit court dismissed the plaintiffs' negligence per se claim, however, because it concluded that Joel Jr. and Bryana were trespassers and the landlords' statutory violation did not rise to the level of willful, wanton or reckless conduct.

¶ 4. The court of appeals held that a genuine issue of material fact exists concerning whether the landlords' placement of the smoke detector located on the ceiling over the open stairway leading from the basement to the back hallway complied with Wis. Stat. § 101.645. The court of appeals reinstated the complaints and remanded the causes to the circuit court for further proceedings. We affirm the decision of the court of appeals, but on different grounds.

I

¶ 5. For purposes of the motions for summary judgment and this review we set forth the following facts that are not in dispute.[3] On December 10, 1994, Diane and Stoney Mullins (the tenants) signed a written lease to rent the lower apartment of a two-unit rental property in Waupun, Wisconsin, that was owned by the landlords. The lease was for a six-month term beginning January 1, 1995.

¶ 6. The lease represents that four people would reside in the lower apartment: the tenants and two of their children, Richard Smith (21 years of age) and

---

[2] All subsequent references to the Wisconsin Statutes will be to the 1993–94 version unless otherwise noted.

[3] A more detailed statement of the facts and of the procedural posture of the case at the circuit court and court of appeals is set forth in the decision of the court of appeals.

Peggy Smith (17 years of age). The lease further provides that the landlords and tenants shall comply with local ordinances; that guests may not stay longer than two weeks without the written consent of the landlord; that the landlords may make reasonable rules relating to the use of the premises; and that the landlords shall give the tenants written notice of a breach of the lease requiring the tenants to either remedy the breach or vacate the premises. The lease, however, was silent concerning the use of the basement. The pertinent lease provisions are as follows:

> CONTROLLING LAW. Landlord and Tenant understand their rights and obligations under the Lease are subject to statutes, rules and ordinances including Chapter 704, Wisconsin Statutes, Wisconsin Administrative Code Chapter AG 134, and applicable local ordinances.
>
> Both parties shall obey all governmental orders, rules and regulations related to the Premises, including local housing codes.
>
> POSSESSION; ABANDONMENT. Landlord shall give Tenant possession of the Premises as provided herein. . . .
>
> USE; GUESTS. . . .Tenant may have guests residing temporarily in the Premises. . . .No guest may remain for more than two weeks without written consent of Landlord which will not be unreasonably withheld.
>
> RULES. Landlord may make reasonable rules governing the use and occupancy of the Premises and the building in which they are located. Tenant acknowledges receipt of these rules prior to signing this Lease. Any failure by Tenant to comply substantially with the rules is a breach of the Lease. . . .

BREACH; TERMINATION. If this lease is for a term of one year or less, should Tenant neglect or fail to perform and observe any of the terms of this Lease, Landlord shall give Tenant written notice of such breach requiring Tenant to remedy the breach or vacate the Premises on or before a date at least five days after the giving of such notice, and if Tenant fails to comply with such notice, Landlord may declare this tenancy terminated and institute action to compel Tenant from the leased premises. . . .

¶ 7. On April 8, 1995, Marylyn Smith, the daughter of Diane Mullins (one of the tenants), moved into the apartment with her three children while she looked for an apartment to rent. The landlords did not know of or consent to the presence of Marylyn Smith and her children in the apartment. Smith's children were six-year-old Charissa Wesenberg, four-year-old Joel James Johnson, Jr., and one-year-old Bryana Harkins.

¶ 8. The lower apartment had two bedrooms and one bath. From the beginning of the lease the tenants used one bedroom and Peggy Smith the other; Richard Smith used the basement as his sleeping quarters. The occupant of the upper apartment never used the basement and had surrendered his key to the basement to the landlords.

¶ 9. A stairway led from the basement to a back hallway, which in turn led to the back door of the kitchen of the lower apartment. A smoke detector was located on the ceiling over the open stairway leading from the basement to the back hallway.

¶ 10. On April 26, 1995, at approximately 8:30 p.m., 18 days after Marylyn Smith moved into the apartment, a fire broke out in the basement where Joel Jr. and Bryana were present. They had been put down

to sleep but it is unclear whether they were sleeping at the time of the fire. Joel Jr. did not ordinarily sleep in the basement but Bryana usually did sleep there.

¶ 11. Upstairs, Diane Mullins heard Bryana crying and walked through the open kitchen door and into the stairway leading to the basement. When she was halfway down the stairs she could go no farther because smoke had filled the basement. Diane Mullins then yelled for someone to call the fire department, ran outside, broke a basement window with her fists and dove in through the window. Ultimately, she was able to rescue Bryana but could not find Joel Jr., who had left the place where he was supposed to be sleeping. Bryana suffered severe burns and Joel Jr. died of smoke inhalation. Diane Mullins stated in her affidavit that during the course of the fire the smoke detector alarm never sounded.

¶ 12. Joel James Johnson filed an action against the landlords, the tenants and Marylyn Smith for the wrongful death of his son, Joel Jr., and filed a separate action as special administrator for the Estate of Joel James Johnson against the same defendants seeking compensation for Joel Jr.'s pain and suffering. The complaints alleged that the landlords were negligent in failing to install a smoke detector in the basement and that the tenants and Marylyn Smith were negligent in allowing the two children to sleep in the basement. Bryana Harkins intervened and filed a complaint against the landlords for her personal injury. The circuit court ultimately dismissed all the complaints; the court of appeals, however, reinstated them.

¶ 13. The landlords petitioned for review of the court of appeals decision that Joel Jr. and Bryana were not trespassers. The plaintiffs cross-petitioned for review of the court of appeals decision that a genuine

issue of material fact exists regarding whether the location of the smoke detector violated Wis. Stat. § 101.645.

## II

■

¶ 14. This court reviews a summary judgment using the same methodology as the circuit court. *State ex. rel. Auchinleck v. Town of LaGrange*, 200 Wis. 2d 585, 591–92, 547 N.W.2d 587 (1996). The methodology of summary judgment is set forth in Wis. Stat. § 802.08(2), which provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

## III

■

¶ 15. The first issue presented is whether the children, Joel Jr. and Bryana, were trespassers in the basement at the time of the fire. The children's legal status as trespassers or non-trespassers is important because the legal status determines the scope of the landlords' duty. As a general matter, a landlord owes a tenant, as well as guests of a tenant, the duty to exercise ordinary care.[4] A landlord's duty to trespassers,

---

[4] *Rockweit v. Senecal*, 197 Wis. 2d 409, 422–23, 541 N.W.2d 742 (1995); *Pagelsdorf v. Safeco Ins. Co. of America*, 91 Wis. 2d 734, 745, 284 N.W.2d 55 (1979).

however, is to refrain from willful and intentional injury.[5]

¶ 16. The court has defined a trespasser as "a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise."[6]

¶ 17. The tenants, whose lease clearly covers occupancy of the lower apartment, consented to the children using the basement at the time of injury. At the time of the injury Diane and Stoney Mullins were tenants in lawful possession of the apartment; they had access to the basement and the occupant of the upper apartment had relinquished his key to the basement; they could allow guests upon the premises and in the basement; they expressly consented to allow Marylyn Smith and her three children to stay with them on a temporary basis. Smith and her children stayed longer than the two-week period set forth in the lease; Richard Smith, one of the four occupants named in the lease, used the basement as sleeping quarters from the beginning of the tenants' occupancy of the premises; the landlords did not know the basement was used for sleeping quarters; Smith and some of her children slept in the basement; Joel Jr. did not ordinarily sleep in the basement.

¶ 18. Hypothetically, the parties agree that if the children were in the lower apartment and their presence there violated the terms of the lease or violated an

---

[5] *Szafranski v. Radetzky*, 31 Wis. 2d 119, 125–26, 141 N.W.2d 902 (1966).

[6] *Antoniewicz v. Reszczynski*, 70 Wis. 2d 836, 843, 236 N.W.2d 1 (1975) (adopting the *Restatement (Second) of Torts 2d* § 329 (1965) definition of trespasser). *See also Reddington v. Beefeaters Tables, Inc.*, 72 Wis. 2d 119, 124, 240 N.W.2d 363, *modified*, 243 N.W.2d 401 (1976).

ordinance because there were too many occupants or because the occupants stayed too long, the children would not become trespassers. In other words, the parties agree that a violation of the lease or an ordinance stemming from the children's presence in the lower apartment would not automatically cause the children to become trespassers. They agree that the landlords would have to take steps required by the lease for curing a breach of the lease.[7] The parties' agreement, however, does not extend to the use of the basement because the parties disagree about what authority the tenants had over the basement under the terms of the lease.

¶ 19. The circuit court concluded that the tenants had no authority under the lease to allow the children to use the basement for sleeping quarters and that therefore the children were trespassers.[8]

---

[7] Similarly, the court of appeals held that the status of the tenants as lawful possessors was not extinguished by their breaches of the lease because the required periods of notice and opportunity to remedy prior to termination of a tenancy had not yet occurred as was required by the lease and Wis. Stat. § 704.17(2)(b). The landlords no longer argue that the tenants automatically lost lawful possession.

[8] The circuit court held that the basement was for the use of the occupants of both apartments and that the tenants had no authority under the lease to permit the children to sleep in the basement and therefore the children were trespassers, stating:

Here the basement, in my view, was common property for both tenants to use for the basement utilities, including the washer and dryer. The lease itself incorporated the requirement that the tenants comply with local ordinances and regulations which prohibited the use of the basement for sleeping purposes. Here the landlord had no knowledge that the basement was so being used by the tenant's son, as well as the guests of the tenant. . . .I'm satisfied that as a matter of law, the tenants had no lawful authority to grant that consent to make the landlord now liable to the plaintiffs

¶ 20. The circuit court accepted the argument of the landlords that the tenants could not, under the lease, take possession of the basement. The landlords' claim is premised on the assertion that the basement was not in the exclusive control of the tenants. The landlords assert that the basement was a common area available to the occupants of both apartments for certain limited purposes and that the landlords retained some control over the basement. The landlords contend that the tenants were allowed, along with the occupant of the upper apartment, to use the basement for storage, for washing and drying clothes, and for other similar short-term uses. The landlords claim, however, that sleeping was not one of the permitted uses of the basement.

¶ 21. The landlords also contend that they were free to enter the basement for any purpose whatsoever, including to make non-emergency repairs and perform maintenance, or to allow entry to furnace or water heater service personnel or utility meter readers.

¶ 22. The landlords argue, however, that their obligation to exercise reasonable care in the maintenance of common areas does not extend to a common area that is being used for an unintended purpose at the time of the injury.[9] They urge that sleeping was an unintended purpose and that only they as landlords had the authority to permit people to sleep in the basement. They conclude that if guests of the tenants slept in the basement without the landlords' consent, either

as frequenters. . . .So I do conclude as a matter of law that the plaintiffs at the time of the fire must be viewed as trespassers in their action against the landlord as owner.

[9] *See, e.g., Amburgy v. Golden*, 557 P.2d 9, 10 (Wash. App. 1976); *Seaman v. Henriques*, 95 A.2d 701, 703 (Conn. 1953).

260

express or implied, they were trespassers as a matter of law.[10]

¶ 23. In contrast, the court of appeals concluded that as a matter of law, the tenants had authority under the lease to consent to the presence of Smith and her children on the premises, which included the basement, and that therefore the children were not trespassers at the time of injury. *Johnson*, 220 Wis. 2d at 275.

¶ 24. The plaintiffs claim that the children were present in the basement with the express consent of the tenants, who were in fact the lawful, exclusive possessors of the basement. They argue that the lease was silent about the use of the basement and that the tenants' right to use the basement was not limited to the particular purposes asserted by the landlords. The plaintiffs also argue that even if the basement were a "common area," shared by the occupants of both apartments and the landlord, the children's presence in and use of the basement at the time of injury does not transform them from guests into trespassers. The plaintiffs contend that if the use of the basement by the tenants and their guests violated an ordinance or

_____

[10] The landlords rely on *Cole v. McKey*, 66 Wis. 500, 505, 29 N.W. 279 (1886), which they interpret as holding that when a sublessee uses the premises contrary to the express provisions of a lease, the injured party is a trespasser. We are not persuaded that *Cole* assists us in the case at hand. First, the common law and statutes governing landlord-tenant rights and responsibilities have changed significantly since 1886. Second, *Cole* involved a formal sub-leasing arrangement that violated the lease; this case does not. Third, *Cole* did not expressly refer to the injured party as a trespasser and therefore it is difficult to conclude that *Cole* was decided on the basis of the injured party's status as a trespasser.

building code, such unintended use would constitute a breach of the lease but would not make them trespassers.

¶ 25. In sum, the parties dispute the factual issues of whether the tenants had exclusive use of the basement, whether the occupants of both apartments had joint use of the basement or whether the basement was a common area for use by occupants of both apartments to which the landlord retained some control. The parties also dispute whether the tenants' use of the basement was limited to certain purposes, what the children were doing in the basement at the time of injury and whether the children's use of the basement at the time of injury was within the limited purposes the landlords assert.

¶ 26. We conclude that whether the tenants had exclusive possession of the basement or joint possession of the basement with the occupant of the upper apartment, whether the basement was a common area, whether the landlord limited the use of the basement to certain purposes and whether the basement was used for an unintended purpose at the time of the injury are all factual issues in dispute. Thus the factual bases that will determine the legal status of the children at the time of the injury and the duty owed by the landlords are in dispute. Because genuine issues of material fact exist that are determinative of the legal issue of the duty owed by the landlords to the children, summary judgment was not appropriate. *See Kretchman v. Reid*, 46 Wis. 2d 677, 680, 176 N.W.2d 301 (1970).

¶ 27. The landlords' final request is that this court relieve them of any potential liability on public

policy grounds. However, this case is before us on review of summary judgment, and no liability has been established. As we have previously done, we decline to reach the public policy question because it is generally better procedure to submit the negligence and cause-in-fact issues to the jury before addressing any public policy concern. *See Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 654–55, 517 N.W.2d 432 (1994); *Morgan v. Pennsylvania General Ins. Co.*, 87 Wis. 2d 723, 738, 275 N.W.2d 660 (1979).

¶ 28. For the reasons set forth, we conclude that the circuit court and court of appeals erred in determining the status of the children as trespassers or non-trespassers on summary judgment when genuine issues of material fact exist. We affirm the decision of the court of appeals, which reversed the circuit court's dismissal of the complaints and remanded the causes for further proceedings.

## IV

¶ 29. The second issue in this case is whether the placement of the smoke detector on the ceiling over the open stairway leading from the basement to the back hallway violated Wis. Stat. § 101.645 as a matter of law.[11]

---

[11] This is the only issue raised in the petition for cross review. Under Wis. Stat. § (Rule) 809.62(6), the petitioner cannot raise or argue issues not set forth in the petition unless ordered otherwise by the supreme court. The landlords' brief raises the issue of whether Wis. Stat. § 101.645 is a safety statute, violation of which constitutes negligence per se. Accordingly, we will not review this issue. *See State v. Scheidell*, 227 Wis. 2d 285, 288 n.1, 595 N.W.2d 661 (1999), authored by the author of the concurrence.

¶ 30. The circuit court held that, as a matter of law, the landlords violated Wis. Stat. § 101.645, as well as the City of Waupun Building Code § 13.45(7). The court of appeals concluded that a genuine issue of material fact exists with regard to whether the landlords violated Wis. Stat. § 101.645. *Johnson*, 220 Wis. 2d at 282–83. The court of appeals stated that the deposition testimony of the former city of Waupun fire chief that was presented by the landlords in opposition to summary judgment, although it supports the landlords' assertion of compliance, would not necessarily be accepted by the finder of fact.

¶ 31. Wisconsin Stat. § 101.645 sets forth three provisions relating to smoke detectors that come into play in this case. First, the owner of a dwelling shall install a functional smoke detector in the basement of the dwelling and on each floor level except the attic or storage area of each dwelling. Wis. Stat. § 101.645(3). Second, each smoke detector shall be installed under the terms of Wis. Stat. § 101.145(2) and (3)(a),[12] which provide that the owner shall install a smoke detector approved by underwriters laboratory according to the directions and specifications of the manufacturer of the

---

[12] Wisconsin Stat. § 101.145 provides in relevant part the following:

(2) APPROVAL. A smoke detector required under this section shall be approved by underwriters laboratory.

(3) INSTALLATION AND MAINTENANCE. (a) The owner of a residential building shall install any smoke detector required under this section according to the directions and specifications of the manufacturer of the smoke detector.

smoke detector.[13] Wis. Stat. § 101.645(2). Third, a municipal authority may inspect common areas of dwellings to ensure compliance with this section. Wis. Stat. § 101.645 (4).

¶ 32. The full text of Wis. Stat. § 101.645 is as follows:

**101.645 Smoke detectors. (1)** DEFINITION. The definition of "smoke detector" under s. 101.145(1)(c) also applies to this section.

**(2)** APPROVAL AND INSTALLATION. A smoke detector required under this section shall be approved and installed as required under s. 101.145(2) and (3)(a).

**(3)** REQUIREMENT. The owner of a dwelling shall install a functional smoke detector in the basement of the dwelling and on each floor level except the attic or storage area of each dwelling. The occupant of such a dwelling unit shall maintain any smoke detector in that unit, except that if any occupant who is not the owner, or any state, county, city, village or town officer, agent or employe charged under statute or municipal ordinance with powers or duties involving inspection of real or personal property, gives written notice to the owner that the smoke detector is not functional the owner shall provide, within 5 days after receipt of that notice,

---

[13] The City of Waupun Building Code § 13.45(7) incorporates the substance of the requirement of Wis. Stat. § 101.645(3):

SMOKE DETECTORS. Effective October 1, 1985, all dwelling units subject to the provisions of this subchapter shall be provided with a working, approved, listed and labeled smoke detector in the basement and on each floor of the dwelling unit, except in the attic or storage area of such dwelling units.

any maintenance necessary to make that smoke detector functional.

**(4)** INSPECTION. The department or a municipal authority may inspect new dwellings, may inspect the common areas of dwellings and, at the request of the owner or renter, may inspect the interior of a dwelling unit in a dwelling to ensure compliance with this section.

¶ 33. It appears that under some circumstances simultaneous compliance with all three of these provisions—that is, subsection (2), subsection (3) and subsection (4) of Wis. Stat. § 101.645—might not be possible. For example, the statutory requirement that a smoke detector be located in the basement and on each floor level might potentially contravene the directions and specifications of the manufacturer,[14] or the determination of a municipal authority of what location might constitute compliance. In other words, compliance with the requirements of § 101.645 is a determination to be made by the circuit court under the facts and circumstances of the case.

¶ 34. Application of these statutory provisions might vary from case to case. The proper location for installation of a smoke detector, for instance, might depend on the type and brand of smoke detector, the manufacturer's directions and specifications for installation, as well as the municipal authority's determination of what constitutes compliance with the statute.

---

[14] The plaintiffs argued in the circuit court that the installation directions for this brand of smoke detector specified that if the detector were to be in the basement it should be installed on the basement ceiling near the stairway leading up to the first floor.

¶ 35. The landlords argue that the smoke detector located over the open stairway leading from the basement to the back hallway complied with the statute. They assert, as did the former fire chief, that the ceiling of the stairway is part of the basement. The landlords also agree with the former fire chief's assertion that this location makes sense because a smoke detector placed there would more likely be heard by people in both the lower and upper apartments.[15] The fire chief, testifying at his deposition, also stated that the location of the smoke detector would have passed his inspection. He stated that he in fact at times encouraged placement of "basement" smoke detectors over the open stairway based on the particular configuration of the stairway. The landlords also contend that a city fire inspector has the authority to interpret the smoke detector requirement to determine whether there is compliance with the statute.

¶ 36. The plaintiffs contend that the location of the smoke detector violated the clear and unambiguous language of Wis. Stat. § 101.645(3), which states that the owner shall install a functional smoke detector in the basement and on each floor level.[16] According to the plaintiffs, the statute means what it says: in the basement means in the basement; no smoke detector was located in the basement; and the former fire chief is not empowered to change the meaning of the statute.

¶ 37. There is no dispute in this case that a smoke detector was located on the ceiling over the open stairway leading from the basement to the back hallway. The ceiling of the open stairway in the back

[15] A statute applying to larger apartment houses provides for a functional smoke detector in the basement and at the head of each floor level of the building. *See* Wis. Stat. § 101.145(4).

[16] Bryana Harkins does not raise or address this issue.

hallway was apparently somewhat below the height of the ceiling of the first floor apartment. The parties disagree about whether this location is properly characterized as being in the basement or on the first floor.

¶ 38. The parties thus disagree about whether the phrase "in the basement" used in Wis. Stat. § 101.645(3) can be interpreted broadly enough to encompass the location of the smoke detector in this case, whether the instructions for installing this particular First Alert smoke detector, as well as the National Fire Protection Association Standard referenced in those instructions, permitted placement of the smoke detector where it was installed, and whether a municipal authority would conclude that the installation location was in compliance with the statute. In other words, this case contains disputed matters of fact as well as questions of the application of the statutory provisions to those disputed facts.

¶ 39. Accordingly, we agree with the court of appeals that because genuine issues of material fact exist, summary judgment was not appropriate. We therefore affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 40. JON P. WILCOX, J. (*concurring*). While I agree with the majority that there are genuine issues of material fact on both issues, I believe the majority has side-stepped its duty by failing to clearly set forth standards courts should apply when reviewing whether there has been a violation of Wis. Stat. § 101.645. The majority indicates that there are three provisions of § 101.645 which come into play in this

case—§ 101.645(2), (3), and (4).[1] Majority at 264–66. The majority submits that "under some circumstances simultaneous compliance with. . .these provisions. . .might not be possible." Majority at 266. The majority does not explain, however, what constitutes a violation of the statute: does a violation of one of these provisions establish a violation of the statute or does compliance with one of these provisions constitute compliance with the statute.

¶ 41. While this strikes me as a question of statutory interpretation, the majority seemingly leaves it to the circuit courts to answer. Yet, the supreme court is the law-declaring court whose purpose is "to oversee and implement the statewide development of the law." *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) (quotations omitted).[2] Because the majority eschews the question, I respectfully concur.

---

[1] Wisconsin Stat. § 101.645 provides in part:

(2) APPROVAL AND INSTALLATION. A smoke detector required under this section shall be approved and installed as required under § 101.145(2) and (3)(a).

(3) REQUIREMENT. The owner of a dwelling shall install a functional smoke detector in the basement of the dwelling and on each floor level except the attic or storage area of each dwelling unit. . . .

(4) INSPECTION. The department or a municipal authority may inspect new dwellings, may inspect the common areas of dwellings and, at the request of the owner or renter, may inspect the interior of a dwelling unit in a dwelling to ensure compliance with this section.

[2] The majority also leaves the development of the law to the court of appeals by affirming its conclusion that § 101.645 is a safety statute, a violation of which constitutes negligence per se. *See Johnson v. Blackburn*, 220 Wis. 2d 260, 282, 582 N.W.2d 488 (Ct. App. 1998).

¶ 42. I am authorized to state that Justices William A. Bablitch and N. Patrick Crooks join this concurring opinion.