Tatum SMAXWELL, a minor, Tanya Smaxwell and Greg Smaxwell, Plaintiffs-Appellants-Petitioners,

v.

Melva BAYARD, Manitowoc County and Employers Health Insurance Company, Defendants,

Gloria THOMPSON and Heritage Mutual Insurance Company, Defendants-Respondents.

Supreme Court

*No. 03–0098. Oral argument April 26, 2004.—Decided July 7, 2004.*

2004 WI 101

(Also reported in 682 N.W.2d 923.)

BRADLEY, J., dissents.
ABRAHAMSON, C.J., joins.

For the plaintiffs-appellants-petitioners there were briefs by *Jordan P. Blad* and *Alpert & Fellows LLP,* Manitowoc, and oral argument by *Jordan P. Blad.*

For the defendants-respondents there was a brief by *Jeremy T. Gill* and *Nash, Spindler, Grimstad & Mc-Cracken LLP*, Manitowoc; and *Jeffrey T. DeMeuse* and *Everson, Whitney, Everson & Brehm, SC*, Green Bay, and oral argument by *Jeremy T. Gill* and *Erik J. Pless*.

¶ 1. JON P. WILCOX, J. Tatum Smaxwell, a minor, and her parents, Tanya and Greg Smaxwell (collectively "the Smaxwells"), appeal from an unpublished court of appeals decision, *Smaxwell v. Bayard*, No. 03–0098, unpublished slip op. (July 30, 2003). The court of appeals affirmed an order of the Manitowoc County Circuit Court, Patrick L. Willis, Judge, which granted summary judgment in favor of the defendants, Gloria Thompson (Thompson) and her insurer, Heritage Mutual Insurance Company (Heritage Mutual),[1] and dismissed the Smaxwells' negligence action.

## I. ISSUE

¶ 2. The issue presented is whether a landowner, who is also a landlord, may be liable on common-law negligence grounds, either in her capacity as a landowner or as a landlord, for injuries sustained by a person lawfully on her property caused by known dangerous dogs exclusively owned and controlled by her tenant. We hold, based on public policy factors, that common-law liability of landowners and landlords for negligence associated with injuries caused by dogs is limited to situations where the landowner or landlord is also the owner or keeper of the dog causing injury. While the facts of the case before us are egregious, allowing liability in this instance—where the defendant

---

[1] When referring to the defendants' arguments on this appeal, we refer to Thompson and Heritage Mutual collectively as "Thompson."

landowner/landlord is neither the owner nor the keeper of the dogs causing injury—would enter a field that has no sensible or just stopping point.

## II. FACTUAL BACKGROUND

¶ 3. The parties do not dispute the material facts in this case. Thompson, at all times relevant to this action, owned two adjacent parcels of land in Manitowoc County. The larger of the two parcels contained Thompson's residence and a former motel that she had converted into apartments. In June of 1999, three of the apartment units were occupied. Thompson rented one unit to Melva Bayard and Richard Hines. Thompson rented the other two units to her daughters, Tanya Smaxwell and Nicole Klein. Tanya Smaxwell lived with her three children: Darion, Tatum, and Jayme. Nicole Klein also resided with her children: Nick and Rochelle.

¶ 4. The second, smaller parcel, roughly a quarter acre of woods, was located behind the first. This property was a separate parcel located behind the property on which Thompson's residence and the converted motel were located. Thompson allowed Bayard to house some of her dogs, including wolf hybrids,[2] on the second parcel since the early 1990s. Thompson allowed Bayard

---

[2] Wolf hybrids are extremely controversial animals. *See generally,* Robert A. Willems, *The Wolf-Dog Hybrid: An Overview of a Controversial Animal,* 5 Animal Welfare Information Center Newsletter (National Agricultural Library, Beltsville, MD), Winter 1994/1995, *available at* http://www.nal.usda.gov/awic/newsletters/v5n4wille.htm. "A wolf hybrid is the offspring of a breeding between a wolf (Canis lupus) and a dog (Canis familiaris)." *Id.* Such animals are classified under the Federal Animal Welfare Act, 7 U.S.C. § 2132, et seq. (2000), as domestic animals. *See* 9 C.F.R. § 1.1 (2004) (defining "dogs" as "any live or

dead dog (Canis familiaris) or any dog-hybrid cross"). The regulations define hybrid cross as follows:

Hybrid cross means an animal resulting from the cross-breeding between two different species or types of animals. Crosses between wild animal species, such as lions and tigers, are considered to be wild animals. Crosses between wild animal species and domestic animals, such as dogs and wolves . . . are considered to be domestic animals.

9 C.F.R. § 1.1 (2004).

Due to genetics and the limitations of technology, it is extremely difficult to accurately determine the amount of "wolf" or "dog" present in a wolf hybrid. Robert A. Willems, *The Wolf-Dog Hybrid: An Overview of a Controversial Animal,* 5 Animal Welfare Information Center Newsletter (National Agricultural Library, Beltsville, MD), Winter 1994/1995, *available at* http://www.nal.usda.gov/awic/newsletters/v5n4wille.htm. A wolf hybrid's appearance (either as a wolf or dog) does not necessarily correlate to its behavior, which can vary from animal to animal depending upon its specific genetic makeup. *Id.* Thus, the behavioral patterns of the breed as a whole are not predictable. *Id.*

Generally speaking, wolves are less aggressive, although more predatory, than dogs, and wolves have a general fear of humans that dogs do not possess. *Id.* "In some hybrids, the timidity of the wolf may be replaced by the aggressiveness of the dog, while the predatory contribution from the wolf ancestry may remain intact." *Id.* Wolf hybrids can be more or less aggressive than dogs and may possess varying degrees of predatory instinct, depending upon the percentage of "wolf" the animal inherited and the type of dog with which the wolf was crossed. *Id.* Therefore, "hybrid attacks on humans can be related to both the aggressive tendencies of the dog and the predatory nature of the wolf." *Id.* Most hybrid attacks are on small children, whom the hybrid may regard as prey, due to some unwitting behavior on the part of the child. *Id.* "Hybrids having strong natural dominance tendencies may be particu-

that Bayard take care of and secure the dogs. Thompson did not charge Bayard any additional rent to keep her dogs in the wooded area. Bayard was in the business of breeding and selling her dogs.

¶ 5. Thompson was not aware of the number of dogs Bayard kept on the property and she took no active role in caring for or housing the dogs. However, Thompson did permit Bayard to construct a number of kennels on this second parcel of property to house the dogs. Thompson examined the construction of the kennels on at least one occasion, but had not inspected the conditions under which the dogs were housed since the mid-1990s. Thompson exercised no control over the animals but was aware that some of the dogs were wolf hybrids.

¶ 6. Since 1992, the Manitowoc County Sheriff's Department received over 70 complaints from Thompson's neighbors regarding the dogs. Most of the complainants expressed fear over the vicious-looking wolf hybrids and concern over the dogs being allowed to run at large. In 1992 a sheriff's deputy was bitten by a German Shepard owned by Bayard. In 1995 a caller complained that the dogs had killed his pigeons in the past. In 1999 Bayard admitted that the dogs had killed some of her puppies. None of the other complaints involved Bayard's dogs actually attacking another person or animal. Thompson was aware that there had been a number of complaints made to law enforcement personnel regarding the dogs and she was aware that one of the dogs bit a police officer. Also, Thompson

larly dangerous. . . . " "Many [hybrids] retain the natural tendency toward destruction that makes the wolf such a poor house pet." *Id.* Thus, "[h]ybrids are often unsuitable in the home environment." *Id.*

received a citation regarding the dogs sometime in the mid-1990s. The nature and disposition of this citation are not part of the record.

¶ 7. On June 15, 1999, Tanya Smaxwell and Nicole Klein, along with their children, were visiting Thompson. The adults were preparing to drink coffee on the porch of Thompson's residence. While the adults were preparing the coffee, three-year-old Tatum was allowed to play outside with her five-year-old cousin Nick. Before the adults finished preparing the coffee, Nick ran into the house screaming that the dogs had attacked Tatum. Three of Bayard's wolf hybrid dogs, each weighing over 70 pounds, were attacking Tatum. Although Thompson and Tanya were able to free Tatum from the attacking dogs, Tatum sustained serious injuries. The attacks occurred on the larger of the two parcels owned by Thompson—the parcel upon which her residence and the converted motel were located. It is undisputed that the dogs were loose because Bayard neglected to latch the kennel the previous night.

## III. PROCEDURAL POSTURE

¶ 8. On July 2, 2001, the Smaxwells filed suit against Bayard, Thompson, Heritage Mutual, and Manitowoc County for common-law negligence.[3] The Smaxwells also joined Employers Health Insurance

---

[3] All of the Smaxwells' claims against Thompson involve allegations of direct negligence on the part of Thompson. That is, while some of the Smaxwells' claims allege that Thompson failed to control or supervise Bayard, all of the Smaxwells' claims arise out of the alleged action and/or inaction of Thompson. The Smaxwells do not assert that there is any basis for vicarious liability on the part of Thompson for the conduct of Bayard.

Company, k/n/a Humana, the insurer who made medical payments on behalf of Tatum. Humana later filed a subrogation counterclaim against Heritage Mutual. Bayard did not file an answer and did not appear in any of the proceedings.

¶ 9. Following discovery, Thompson moved for summary judgment on the ground that as a matter of law she was not responsible for Tatum's injuries either as a landowner or landlord. Manitowoc County moved for summary judgment on the ground of discretionary immunity. Heritage Mutual moved for summary judgment on the ground that Thompson had no personal liability and that if she did, its policy did not provide coverage. Heritage Mutual and the Smaxwells moved for summary judgment against Humana on the ground that Humana's subrogation counterclaim was barred under federal law.

¶ 10. On October 25, 2002, the circuit court rendered a decision and order on the various motions for summary judgment. The circuit court concluded that "Thompson's conduct, even if negligent, cannot form the basis for liability under the current state of the law in Wisconsin." The circuit court noted that the law does not impose liability on negligent landlords or landowners for injuries caused by nonowned dogs on their property. Therefore, the circuit court granted Thompson and Heritage Mutual's motions for summary judgment against the Smaxwells and dismissed the Smaxwells' claims against Thompson and Heritage Mutual. The circuit court also granted Manitowoc County's motion for summary judgment and dismissed the Smaxwells' claim against Manitowoc County. In addition, the circuit court granted Heritage Mutual's motion for summary judgment against Humana and dismissed Humana's cross-claim against Heritage Mutual.

The court denied the Smaxwells' motion for summary judgment against Humana and dismissed Humana's cross-claim against Thompson, Manitowoc County, and Heritage Mutual.

¶ 11. The Smaxwells appealed the portion of the circuit court order granting summary judgment and dismissing their negligence action against Thompson and Heritage Mutual. The court of appeals held that under Wisconsin law only an owner or keeper of an animal may be held liable for common-law negligence. *Smaxwell*, No. 03–0098, unpublished slip op., ¶ 11. The court of appeals reasoned that because a landlord normally does not exercise control over a tenant's dog and is not normally the owner or keeper of the dogs, the landlord is not liable under common-law negligence for any injuries caused by the dog. *Id.* In addition, the court of appeals stated that a landlord is under a duty to exercise ordinary care only with respect to defects in and maintenance of the premises and that this rule does not extend to dog bite claims. *Id.*, ¶ 15.

## IV. STANDARD OF REVIEW

¶ 12. We review a circuit court's grant of summary judgment independently, applying the same methodology as the circuit court. *Town of Delafield v. Winkleman*, 2004 WI 17, ¶ 15, 269 Wis. 2d 109, 675 N.W.2d 470. Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2)

(2001–02).[4] We view the summary judgment materials in the light most favorable to the nonmoving party. *Torgerson v. Journal/Sentinel, Inc.,* 210 Wis. 2d 524, 537, 563 N.W.2d 472 (1997). Summary judgment should not be granted, "unless the facts presented conclusively show that the plaintiff's action has no merit and cannot be maintained." *Goelz v. City of Milwaukee,* 10 Wis. 2d 491, 495, 103 N.W.2d 551 (1960). Where the material facts are not disputed, the court is presented solely with a question of law, subject to de novo review. *Town of Delafield,* 269 Wis. 2d 109, ¶ 16.

## V. ANALYSIS

¶ 13. In this case, we are called upon to determine whether Thompson may be liable, either in her capacity as a landlord or landowner, for injuries sustained by a person lawfully on her property caused by known dangerous dogs exclusively owned and controlled by her tenant. Thus, this case involves the intersection of three areas of negligence law: landowner liability for injuries occurring on the property, landlord premises liability, and liability for the acts of known dangerous dogs. In order to provide the reader with context for the parties' respective arguments, we briefly summarize the principal cases upon which they rely.

¶ 14. In *Gonzales v. Wilkinson,* 68 Wis. 2d 154, 155, 227 N.W.2d 907 (1975), the plaintiff, a one and a half-year-old child, wandered from home onto an adjacent yard where a duplex was located and was bitten on the head by a basset hound owned by the duplex owner's tenant. The plaintiff sued both the landlord and tenant under an attractive-nuisance theory. *Id.* at

---

[4] All citations to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

155–56. With respect to the landlord, the complaint alleged, inter alia, that he was negligent in "failing to adequately enclose the yard in which said vicious dog was located[,]" "failing to provide someone to watch over the said vicious dog when the dog was in the yard where the incident occurred[,]" and "allowing his tenant . . . to maintain occupancy rights with respect to the duplex and its grounds while knowing that he maintained a vicious animal." *Id.* at 156.

¶ 15. The majority in *Gonzales* concluded that the plaintiff could not maintain an action for attractive nuisance because a dog does not constitute an artificial condition that is dangerous to children. *Id.* at 157. The majority reasoned: "[a]lthough such a condition need not be permanently erected upon the land, it must be 'artificially construed.' " *Id.* The majority also disagreed with the dissent's assertion that the complaint, liberally construed, alleged a cause of action in negligence:

> In examining the complaint we find no allegation that [the landlord] was either the owner or the keeper of the dog, nor is it alleged that he in any way had any dominion over the dog. There is an allegation that he knew his tenant . . . maintained a vicious dog on the premises but the law does not require him, as the owner of the building, to be an insurer for the acts of his tenant. Under the allegations of this complaint, we hold that the ownership and control of the premises created no duty on the part of the owner of the premises to the plaintiffs.

*Id.* at 158.

¶ 16. The next term, in *Antoniewicz v. Reszczynski,* 70 Wis. 2d 836, 839, 236 N.W.2d 1 (1975), this court abolished the common-law distinction between a

landowner's duty to licensees and invitees.[5] In *Antoniewicz*, the plaintiff went to the home of the defendant for the purpose of giving the defendant's daughter a ride to a friend's home. *Id.* at 840. While at the defendant's residence, the plaintiff slipped on a patch of ice on the back porch that was known to the defendant but unknown to the plaintiff. *Id.* The defendant argued that he owed no duty to warn the plaintiff of hidden dangers because the plaintiff was merely a social invitee. This court concluded that the circuit court properly imposed the standard of ordinary care upon the landowner in overruling his demurrer. *Id.* at 857–58. In doing so, we abolished the distinction between the duty a landowner owes to licensees and invitees and held:

> The duty toward all persons who come upon property with the consent of the occupier will be that of ordinary care. By such standard of ordinary care, we mean the standard that is used in all other negligence cases in Wisconsin. . . . Under that test, as we have repeatedly stated, negligence is to be determined by ascertaining whether the defendant's exercise of care foreseeably created an unreasonable risk to others. That test is to be applied at the negligence phase of the analysis to the world at large and not to the particular plaintiff.

*Id.* at 857.

¶ 17. Four years later, this court continued the trend of abrogating common-law immunities by abolishing the general cloak of immunity enjoyed by landlords. *Pagelsdorf v. Safeco Ins. Co. of Am.*, 91 Wis. 2d 734, 735, 284 N.W.2d 55 (1979). In *Pagelsdorf*, the plaintiff was assisting a neighbor in vacating her apart-

---

[5] The court, however, refused to abrogate the immunities that a landowner enjoys in relation to trespassers. *Antoniewicz v. Reszczynski*, 70 Wis. 2d 836, 839, 236 N.W.2d 1 (1975).

ment. *Id.* at 736–37. While moving a box spring, a rotted balcony railing gave way, and the plaintiff fell to the ground, sustaining injuries. *Id.* at 737. The issue on appeal was whether the circuit court erred in failing to instruct the jury that the landlord owed the plaintiff a duty to exercise ordinary care in maintaining the premises. *Id.* at 738.

¶ 18. At the time, the general common-law rule was that a landlord was not liable for injuries to his tenants and their visitors sustained as a result of unknown defects in the premises. *Id.* at 740. This rule did not apply, however, where the landlord negligently made repairs to the property. *Id.* at 741. The court noted that this rule was distinct from the rule governing a landowner's duty to invitees and licensees at issue in *Antoniewicz* because the rule relating to landlords was derived from the concept of a lease as a conveyance and the premise that a landlord relinquished control and possession of the property when it was leased. *Id.* at 740.

¶ 19. The court abandoned the then-existing common-law rule relating to landlord liability, relying, in part, on the modern view of a lease as a contract, *id.* at 743, and held that "a landlord is under a duty to exercise ordinary care in the maintenance of the premises." *Id.* at 741. The court noted that although the *Antoniewicz* decision was not dispositive of the question before it, much of the rationale from *Antoniewicz* supported the rejection of the old common-law rule relating to landlord liability. *Id.* at 742–45. The court concluded:

> [A] landlord owes his tenant or anyone on the premises with the tenant's consent a duty to exercise ordinary care. If a person lawfully on the premises is injured as a result of the landlord's negligence in maintaining the

premises, he is entitled to recover from the landlord under general negligence principles. Issues of notice of the defect, its obviousness, control of the premises, and so forth are all relevant only insofar as they bear on the ultimate question: Did the landlord exercise ordinary care in the maintenance of the premises under all the circumstances?

*Id.* at 745.

¶ 20. Returning to the dog bite arena, in *Pattermann v. Pattermann,* 173 Wis. 2d 143, 147–48, 496 N.W.2d 613 (Ct. App. 1992), the plaintiff was at a family reunion at her fiancé's mother's home when, while standing in the doorway, she was bitten by a dog owned by the mother's adult son. The plaintiff sued the homeowner, alleging strict liability under Wis. Stat. § 174.02 and common-law negligence. *Id.* at 148. The court of appeals first concluded that the homeowner was not liable under § 174.02 because the homeowner was not a harborer or keeper of the dog. *Id.* at 149–51.

¶ 21. Addressing the common-law negligence claim, the court of appeals stated: "Even if [the defendant] were not the owner or keeper of the animal, as the landowner she may be liable for negligence associated with a known dangerous dog allowed on her premises." *Id.* at 151 (citing *Klimek v. Drzewiecki,* 352 N.W.2d 361 (Mich. Ct. App. 1984)). However, the court of appeals stated that the plaintiff could not recover because she failed to put forth any evidence that the dog had dangerous propensities. *Id.* at 151–52.

¶ 22. Similar to the case at bar, in *Malone v. Fons,* 217 Wis. 2d 746, 749, 580 N.W.2d 697 (Ct. App. 1998), a minor child was bitten by a dog owned by the defendant's tenant. The child was standing in a driveway adjacent to the defendant's property when the tenant's dog broke free from a leash held by the tenant's

daughter and bit the plaintiff. *Id.* at 750. The plaintiff, through her guardian ad litem and her parents, sued the landlord under various theories, including common-law negligence and strict liability under § 174.02. *Id.* at 750–51.

¶ 23. Regarding the common-law claim, the court of appeals rejected the plaintiffs' argument that the language in *Gonzales* regarding a landlord's liability for injuries caused by his tenant's dog was dicta. *Id.* at 753–54. The court of appeals held that under *Gonzales* a landlord who is not the owner or keeper of his tenant's dog and who exercises no dominion or control over the dog cannot be held liable under common-law negligence for acts of his tenant's dog. *Id.* at 755. The court of appeals also noted that the *Gonzales* rule is consistent with the general common law relating to dog injuries, which holds only the owner or keeper liable for such injuries. *Id.* at 755–56 (citing Wis JI-Civil 1391). The court of appeals reasoned that *Gonzales* merely extended this common-law rule into the landlord-tenant context. *Id.* at 757.

¶ 24. Next, the court of appeals rejected the plaintiffs' arguments that *Pattermann* and *Pagelsdorf* had overruled *Gonzales,* or at least undermined much of its rationale. *Id.* at 757–62. The court of appeals distinguished *Pattermann,* noting that the decision did not discuss the duties of a landlord. *Id.* at 758. Further, the court of appeals noted that the statements in *Pattermann* regarding common-law liability of a landowner for injuries caused by a nonowned dog could not be regarded as law, as the *Pattermann* court merely assumed that the plaintiff had correctly stated the law and such statements were inconsistent with this court's opinion in *Gonzales. Id.* at 758–59.

¶ 25. Discussing the *Pagelsdorf* decision, the court of appeals explained that the rule in *Pagelsdorf,* while groundbreaking, was limited to defects in the premises and property maintenance issues. *Id.* at 759–61. Thus, the court of appeals stated that *Pagelsdorf* did not overrule *Gonzales. Id.* at 760. Further, the court of appeals in *Malone* noted that the plaintiffs had cited to no authority for the proposition that a tenant's dog could be considered a "defect" in the premises. *Id.* at 762. The court of appeals concluded that the circuit court correctly granted summary judgment and dismissed the plaintiffs' negligence claims against the landlord. *Id.*

¶ 26. In the present case, the Smaxwells make arguments substantially similar to those made by the plaintiffs in *Malone.* First, they argue that as a landowner, Thompson owed a duty of care to avoid exposing her guests to unreasonable risks of harm on the property. Relying on *Pattermann,* the Smaxwells argue that a landowner may be liable in negligence when she fails to warn guests of a known dangerous dog on the property or fails to take precautions to protect guests on her property from known dangerous animals, regardless of whether the landowner is the owner or keeper of the animal. The Smaxwells assert that the issue here is not whether a *landlord* is liable for the acts of her tenant's dog, but rather, whether a *landowner* can be liable for failure to maintain her property by allowing known dangerous dogs to run at large on the property.

¶ 27. Second, the Smaxwells argue that the *Gonzales* decision is no longer good law, as it was chiefly concerned with whether a dangerous dog could constitute an attractive nuisance and its discussion of negligence law was based upon the outdated notion of "duty."

The Smaxwells assert that a landowner's duty towards those lawfully on his property was greatly expanded by the *Antoniewicz* and *Pagelsdorf* decisions and a landowner's duty of ordinary care was not recognized when *Gonzales* was decided. In addition, they argue that *Pattermann* established that landowners may be liable under common-law negligence for injuries caused by nonowned dogs permitted on the property. The Smaxwells contend that *Pattermann* established that a dangerous dog may be a condition on the land, sufficient to give rise to a duty of ordinary care. Also, the Smaxwells contend that *Malone* may be distinguished on its facts because the injury there did not occur on the landowner's property.

¶ 28. Finally, the Smaxwells argue it is inappropriate to preclude liability based on public policy. They assert that any public policy determination in this case would be premature because under *Alvarado v. Sersch,* 2003 WI 55, ¶ 27, 262 Wis. 2d 74, 662 N.W.2d 350, a negligence case should be tried to a jury before public policy may be applied to preclude liability. In the alternative, the Smaxwells argue that public policy should not preclude liability in this case because public policy supports exposing landowners to liability for dangerous animals on their property. The Smaxwells proclaim that "[t]he time has come for all Wisconsin Courts to recognize that dog owners should not be the only parties responsible for protecting citizens from the risks posed by known dangerous animals." Pet'r Br. at 21.

¶ 29. In contrast, Thompson contends that under common law, only owners and keepers of dogs are liable for injuries that the animals might cause. Adopting the rationale of *Malone,* Thompson asserts that *Gonzales* simply extended this common-law rule to the landlord-tenant context. In addition, Thompson argues that she

had no duty to protect her guests from dogs running at large on the property because a landowner's liability extends only to dangerous conditions on the property and a dog is not a dangerous condition. Thompson asserts that the language upon which the Smaxwells rely from *Pattermann* was merely dicta because the *Pattermann* court merely assumed, without deciding, that the plaintiff there correctly stated the law. Further, she asserts that even if the language from *Pattermann* was not dicta, the court of appeals was without the power to overrule *Gonzales*.

¶ 30. In any event, Thompson contends that the issue here is not whether a *landowner* may be liable for injuries caused by dogs running at large on the property; rather the issue is whether a *landlord* may be liable for injuries caused by a dog owned and controlled by her tenant. Thompson argues that while *Gonzales* referred to a landlord's duty, what it really was doing was proclaiming that as a matter of public policy a landlord should not be liable for the acts of a tenant's dog. Thompson notes that it was well established by the time of *Gonzales* that in Wisconsin everyone owed a duty of ordinary care to everyone else. Further, she maintains that the holding in *Pagelsdorf* was limited to cases involving defects in rental property and did not extend a landlord's liability for the acts of her tenant's dogs. Thompson asserts that a tenant's dog is not a "defect" in the premises.

¶ 31. Finally, Thompson asserts that public policy should preclude liability in this case. She contends that a landlord should not be liable for acts of a nonowned dog over which she has no control or dominion. Further, she maintains that the legislature has established a clear policy of holding only owners and keepers of dogs liable for dog injuries under Wis. Stat. § 174.02,

297

Wisconsin's "dog-bite statute." She maintains that it has been well established under *Gonzales* and *Malone* that landlords are not liable for injuries caused by their tenants' dogs and only owners or keepers of dangerous animals are liable for their injuries. Thompson asks us to hold that as a matter of public policy landowners, including landlords, are not liable for injuries caused by nonowned dogs.

¶ 32. In order to address the parties' respective arguments, we turn now and briefly review Wisconsin's general principles of negligence:

> To establish a negligence claim, a plaintiff must prove: (1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's injury, and (4) actual loss or damage resulting from the injury.

*Gritzner v. Michael R.*, 2000 WI 68, ¶ 19, 235 Wis. 2d 781, 611 N.W.2d 906. Wisconsin has rejected the "no-duty" approach of the majority opinion in *Palsgraf v. Long Island Railroad Co.*, 162 N.E. 99, 99–101 (N.Y. 1928). *Gritzner*, 235 Wis. 2d 68, ¶ 20 n.3. As we have previously explained:

> In this state all persons have a duty of reasonable care to refrain from those acts that unreasonably threaten the safety of others. This duty arises "when it can be said that it was foreseeable that his act or omission to act may cause harm to someone." Thus, the existence of a duty hinges upon foreseeability.

*Antwaun A. v. Heritage Mut. Ins. Co.*, 228 Wis. 2d 44, 55–56, 596 N.W.2d 456 (1999) (citations omitted) (quoting *A.E. Inv. Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 483–84, 214 N.W.2d 764 (1974)). " 'A party is

negligent when he commits an act when some harm to someone is foreseeable.' " *Rockweit v. Senecal,* 197 Wis. 2d 409, 420, 541 N.W.2d 742 (1995) (quoting *Rolph v. EBI Cos.,* 159 Wis. 2d 518, 520, 464 N.W.2d 667 (1991)). "At the very least, every person is subject to a duty to exercise ordinary care in all of his or her activities." *Gritzner,* 235 Wis. 2d 781, ¶ 20.

> Thus, when determining the existence of a duty, the primary question we ask is not whether the defendant has a duty to take (or refrain from) certain actions, but whether the defendant's actions (or lack thereof) were consistent with the general duty to exercise a reasonable degree of care under the circumstances.

*Stephenson v. Universal Metrics, Inc.,* 2002 WI 30, ¶ 16, 251 Wis. 2d 171, 641 N.W.2d 158.

¶ 33. Therefore, in Wisconsin, "the determination to deny liability is essentially one of public policy rather than of duty . . . ." *Rockweit,* 197 Wis. 2d at 425. *See also Gritzner,* 235 Wis. 2d 781, ¶ 24 ("Wisconsin courts address public policy concerns directly, rather than asking whether the defendant owed a 'duty' to the particular victim."); *Bowen v. Lumbermens Mut. Cas. Co.,* 183 Wis. 2d 627, 644, 517 N.W.2d 432 (1994) ("In Wisconsin, the doctrine of public policy, not the doctrine of duty, limits the scope of the defendant's liability.").[6]

---

[6] *But see Johnson v. Blackburn,* 227 Wis. 2d 249, 257–58, 595 N.W.2d 676 (1999)("As a general matter, a landlord owes a tenant, as well as guests of a tenant, the duty to exercise ordinary care. A landlord's duty to trespassers, however, is to refrain from willful and intentional injury."); *Rockweit v. Senecal,* 197 Wis. 2d 409, 421, 541 N.W.2d 742 (1995) ("Although individuals generally owe a duty of ordinary care to all persons, we recognize that limitations do exist with respect to the imposition of a legal duty in some cases.").

Therefore, in Wisconsin, negligence is a distinct concept from liability.

¶ 34. As noted *supra,* this case involves the application of Wisconsin's general negligence principles in three distinct areas: landowner liability, landlord liability, and liability for the acts of known dangerous dogs. In other words, the issue presented here is whether Thompson may be liable for the acts of non-owned dangerous dogs either in her capacity as a landowner or landlord. We begin by addressing the duty of landowners in general and landlords in particular.

¶ 35. It is clear under *Antoniewicz* and its progeny that Thompson, as a landowner, owed a general duty to exercise ordinary care to all those who legally came upon her property. As previously discussed, this court in *Antoniewicz* held that a landowner owes a duty to exercise reasonable care to all those who come upon her property with consent. *Antoniewicz,* 70 Wis. 2d at 857. While the injury in *Antoniewicz* was caused by a defect in the physical premises (a patch of ice on the porch), *id.* at 840, this court has since clarified that a landowner's duty is not limited to defects in or conditions on the physical premises:

> [T]he duty of the owner or possessor of land toward persons who come upon property with the consent of the owner or possessor does not relate solely to defects or conditions which may be on such premises. Rather, the duty of an owner or possessor of land toward all persons who come upon property with the consent of the owner or occupier is that of ordinary care.

*Shannon v. Shannon,* 150 Wis. 2d 434, 443, 442 N.W.2d 25 (1989). Thus, it is unnecessary to address the Smaxwells' contention that a dog may be a "condition" on the premises.

¶ 36. However, it is unclear whether a landlord's duty extends beyond defective conditions in the leased premises. In *Pagelsdorf,* the injury occurred because of a rotted railing on the leased premises. *Pagelsdorf,* 91 Wis. 2d at 737. Thus, the issue in *Pagelsdorf* specifically concerned a landlord's duty to maintain the physical premises and keep it free from defects. *Id.* at 738. Indeed, in abrogating the old common-law immunity of landlords, the *Pagelsdorf* court was chiefly concerned with landlords who failed to keep the physical premises in good repair and rented " 'tumble-down' " housing. *Id.* at 744 (quoting *Pines v. Perssion,* 14 Wis. 2d 590, 595–96, 111 N.W.2d 409 (1961)). As such, the *Pagelsdorf* court specifically framed the issue as follows: "We dispose of this appeal by addressing the single issue of the scope of a landlord's duty toward his tenant's invitee who is injured as a result of *defective premises.*" *Id.* at 735 (emphasis added). In addition, the court framed its holding in regard to the physical premises leased by the landlord: "We . . . abolish the general common law principle of nonliability of landlords toward persons injured as a result of their *defective premises.*" *Id.* at 744 (emphasis added).

¶ 37. Since *Pagelsdorf,* there is no case that has extended a landlord's duty of reasonable care beyond defects in the physical premises. That is, no case has specifically extended *Pagelsdorf* as *Shannon* extended *Antoniewicz.* There is conflicting case law as to whether a landlord's duty of reasonable care is limited to defects in and maintenance of the leased premises, or whether the landlord's duty of reasonable care is of a general

nature.[7] In *Alvarado,* 262 Wis. 2d 74, ¶ 27, a majority of this court recently rejected the assertion of the

[7] *Compare Shannon v. Shannon,* 150 Wis. 2d 434, 445–46, 442 N.W.2d 24 (1989)(recognizing that the court in *Pagelsdorf v. Safeco Ins. Co. of Am.,* 91 Wis. 2d 734, 745, 284 N.W.2d 55 (1979), imposed a duty upon landlords to " 'exercise ordinary care in the maintenance of the premises")(quoting *Pagelsdorf,* 91 Wis. 2d at 745); *Malone v. Fons,* 217 Wis. 2d 746, 760, 580 N.W.2d 697 (Ct. App. 1998)(concluding that "*Pagelsdorf's* rule is limited to situations dealing with property maintenance issues and defects in the premises"); *Jacobs v. Karls,* 178 Wis. 2d 268, 273, 504 N.W.2d 353 (Ct. App. 1993)(noting that in *Pagelsdorf,* this court "adopted a rule that a landlord is under a duty to exercise ordinary care in the maintenance of the premises"); *Couillard v. Van Ess,* 141 Wis. 2d 459, 462, 415 N.W.2d 554 (Ct. App. 1987)(noting that the *Pagelsdorf* decision "extended a landlord's duty to exercise ordinary care to maintain leased premises and abrogated any prior common law immunity") *with Antwaun A. v. Heritage Mut. Ins. Co.,* 228 Wis. 2d 44, 55–56, 596 N.W.2d 456 (1999)(Wisconsin's "general principles of negligence are fully applicable in the landlord and tenant context.")(citing *Pagelsdorf,* 91 Wis. 2d at 742–43); *Johnson,* 227 Wis. 2d at 257 ("As a general matter, a landlord owes a tenant, as well as guests of a tenant, the duty to exercise ordinary care."); *Rockweit,* 197 Wis. 2d at 422 (stating that *Pagelsdorf* imposed upon a landlord a general duty to exercise ordinary care); *Maci v. State Farm Fire & Cas. Co.,* 105 Wis. 2d 710, 714, 314 N.W.2d 914 (Ct. App. 1981) (noting the issue in *Pagelsdorf* was whether landlords should continue to enjoy immunity from liability in maintaining demised portions of the premises but stating that the *Pagelsdorf* court determined that a landlord owes his tenant and others on the property with consent a general duty to exercise ordinary care), *abrogated on other grounds* by *Rockweit,* 197 Wis. 2d at 422–23.

We also note that the Wisconsin Civil Jury Instruction regarding the duty of property owners towards nontrespasser users combines the duties of landowners and landlords. *See* Wis JI-Civil 8020. The jury instruction provides that an owner of

defendant landlord that it did not owe a duty to exercise reasonable care to a janitorial employee who was injured while cleaning an apartment, noting "everyone owes a duty of ordinary care to all persons." Yet, the facts of *Alvarado* fell within the "defect in the premises" ambit of *Pagelsdorf,* as the plaintiff in *Alvarado* was injured due to the failure of the landlord to discover a " 'strange looking candle' " during his routine inspection of the premises after the tenant vacated. *Id.,* ¶¶ 2–5.

property must use ordinary care to manage, construct, and maintain his or her premises to avoid exposing those lawfully on the premises to an unreasonable risk of harm. The instruction provides:

> (An owner) (A possessor) of property must use ordinary care under the existing circumstances to (construct) (manage) (maintain) his or her premises to avoid exposing persons on the property with consent to an unreasonable risk of harm.
>
> "Ordinary care" is the degree of care which the great mass of people ordinarily uses under the same or similar circumstances. A person fails to use ordinary care when, without intending to do any wrong, he or she does an act or omits a precaution under circumstances in which a person of ordinary intelligence and prudence should reasonably foresee that the act or omission will subject another person or property of another to an unreasonable risk of injury or damage.
>
> In performing this duty, (an owner) (a possessor) of premises must use ordinary care to discover conditions or defects on the property which expose a person to an unreasonable risk of harm. If an unreasonable risk of harm existed and the (*owner*) (*possessor*) was aware of it, or, if in the use of ordinary care (he) (she) should have been aware of it, then it was (his)(her) duty to either correct the condition or danger or warn other persons of the condition or risk as was reasonable under the circumstances.

Wis JI-Civil 8020. In light of *Shannon,* 150 Wis. 2d at 443, the instruction incorrectly states the law as far as a landowner's duty is concerned.

¶ 38. Despite this inconsistency regarding how courts have interpreted *Pagelsdorf's* holding, all of the cases in Wisconsin involving landlord liability under the *Pagelsdorf* rule concerned actual defects in the leased premises. *Alvarado,* 262 Wis. 2d 74, ¶¶ 2–5 (firework resembling candle left in apartment); *Antwaun A.,* 288 Wis. 2d at 57 (lead paint in apartments); *Johnson v. Blackburn,* 227 Wis. 2d 249, 252, 595 N.W.2d 676 (1999) (smoke detector allegedly located in improper location); *Pagelsdorf,* 91 Wis. 2d at 736–37 (rotted wooden railing on tenant's balcony); *Jacobs v. Karls,* 178 Wis. 2d 268, 273, 504 N.W.2d 353 (Ct. App. 1993) (failure to make repairs to premises when landlord contracted to do so); *Couillard v. Van Ess,* 141 Wis. 2d 459, 461, 415 N.W.2d 554 (Ct. App. 1987) (seven-square-foot hole in factory floor); *Maci v. State Farm Fire & Cas. Co.,* 105 Wis. 2d 710, 718, 314 N.W.2d 914 (Ct. App. 1981), (faulty rain gutter allowing rain to fall on only path between garage and residence), *abrogated on other grounds* by *Rockweit,* 197 Wis. 2d at 422–23.

¶ 39. We need not decide today whether a dangerous dog may constitute a "defect" in the rental premises or whether a landlord's duty of ordinary care extends beyond defects in or maintenance of the physical premises because we ultimately conclude, on public policy grounds, that common-law liability of landowners and landlords for negligence associated with injuries caused by dogs is limited to situations where the landowner or landlord is also the owner or keeper of the dog causing injury. That is, for the purposes of this decision, we assume that Thompson's conduct constituted actionable negligence either in her capacity as a landowner in general or landlord in particular. As noted *supra,* in Wisconsin, even if all the elements for a claim of

negligence are proved, or liability for negligent conduct is assumed by the court, the court nonetheless may preclude liability based on public policy factors. *Stephenson*, 251 Wis. 2d 171, ¶ 42.

¶ 40. A public policy analysis is separate and distinct from determining whether a duty exists in a particular case. *Id.*, ¶ 41. Whether public policy precludes liability is a matter of law that is decided by this court de novo. *Id.* Public policy may bar recovery against the negligent tortfeasor if this court determines any of the following:

> (1) the injury is too remote from the negligence; (2) the injury is too wholly out of proportion to the tortfeasor's culpability; (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; (4) allowing recovery would place too unreasonable a burden upon the tortfeasor; (5) allowing recovery would be too likely to open the way to fraudulent claims; or (6) allowing recovery would have no sensible or just stopping point.

*Id.*, ¶ 43.

¶ 41. Liability may be denied solely on the basis of one of these factors. *Rieck v. Med. Protective Co.*, 64 Wis. 2d 514, 518, 219 N.W.2d 242 (1974). This court has stated that generally the "better practice is to submit the case to the jury before determining whether the public policy considerations preclude liability." *Alvarado*, 262 Wis. 2d 74, ¶ 18. "However, where the facts presented are simple and the question of public policy is fully presented by the complaint and the motion for summary judgment, this court may make the public policy determination." *Sawyer v. Midelfort*, 227 Wis. 2d

124, 141, 595 N.W.2d 423 (1999). Thus, "[t]he assessment of public policy does not necessarily require a full factual resolution of the cause of action by trial. This court can, and has, decided such public policy questions on demurrer." *Stephenson,* 251 Wis. 2d 171, ¶ 42 (citations omitted). Ultimately, "[a] finding of nonliability made in terms of public policy is a question of law which the court alone decides." *Rockweit,* 197 Wis. 2d at 425.

¶ 42. We begin our public policy analysis by noting that traditionally, Wisconsin's common law subjected only owners and keepers of animals to liability for their injurious acts:

> At common law the owner or keeper of a dog was not liable for the vicious or mischievous acts of the dog unless he had prior knowledge of the vicious or mischievous propensities of the dog or unless the injury was attributable to the negligence of the owner or keeper.

*Chambliss v. Gorelik,* 52 Wis. 2d 523, 528, 191 N.W.2d 34 (1971).[8] The common-law rule regarding liability for

---

[8] *See also Nelson v. Hansen,* 10 Wis. 2d 107, 113, 103 N.W.2d 251 (1960)("In this state at common law the owner was not liable for damages resulting from the vicious act of his dog unless he had prior knowledge of its vicious propensities, or the injury was attributable to some negligence on the part of the owner[.]")(citations omitted); *Malone,* 217 Wis. 2d at 756 (noting that "only an owner or keeper of an animal can be held liable for common-law negligence").

We reject the Smaxwells' contention that the court of appeals' decision in *Pattermann v. Pattermann,* 173 Wis. 2d 143, 152, 496 N.W.2d 613 (1992), established that a landowner could be liable under a common-law negligence theory for injuries caused by a known dangerous dog allowed on her premises. The *Pattermann* court made this proclamation with no substantive analysis, despite the fact that no other Wisconsin court had held

the acts of a dog was explained in *White v. Leeder,* 149 Wis. 2d 948, 955–56, 440 N.W.2d 557 (1989):

> The common-law rule *first requires the owner or keeper to use ordinary care* in controlling the characteristics normal to the animal's class. . . . The common-law rule further allows the plaintiff to show that the individual animal had vicious or mischievous propensities, and that the owner or keeper knew or should have known of them.

(Emphasis added.) Thus, "[t]he liability of an owner or keeper is predicated upon the failure to exercise ordinary care in the restraint and control of the animal." *Id.* at 958.[9]

¶ 43. It was with this understanding of the common law relating to injuries by animals that the *Gonzales* court rejected the dissent's assertion that the

as such, and cited only to a court of appeals decision from Michigan. *See id.* (citing *Klimek v. Drzewiecki,* 352 N.W.2d 361 (Mich. Ct. App. 1984)). Further, because a landlord may also be a landowner, this statement from *Pattermann* arguably conflicts with our decision in *Gonzales v. Wilkinson,* 68 Wis. 2d 154, 155, 227 N.W.2d 907 (1975).

[9] The common-law rule is summarized in Wis JI-Civil 1391, Liability of Owner or Keeper of Animal:

> An owner (keeper) of a(n) (note: *insert name of animal*) is deemed to be aware of the natural traits and habits which are usual to a(n) (*animal*) and must use ordinary care to restrain and control the animal so that it will not in the exercise of its natural traits and habits cause injury or damage to the person or property of another.

> In addition, if an owner (keeper) is aware or in the exercise of ordinary care should be aware that the animal possesses any unusual traits or habits that would be likely to result in injury or damage, then the owner (keeper) must use ordinary care to restrain the animal as necessary to prevent the injury or damage.

plaintiff's complaint alleged a cause of action against the defendant landlord in negligence:

> In examining the complaint *we find no allegation that [the defendant] was either the owner or the keeper of the dog,* nor is it alleged that he in any way had any dominion over the dog. There is an allegation that he knew his tenant, [the plaintiff], maintained a vicious dog on the premises but the law does not require him, as the owner of the building, to be an insurer for the acts of his tenant. Under the allegations of this complaint, we hold that the ownership and control of the premises created no duty on the part of the owner of the premises to the plaintiff.

*Gonzales,* 68 Wis. 2d at 158 (emphasis added).

¶ 44. We agree with the court in *Malone* that although *Gonzales* was primarily an attractive-nuisance case, this language was not dicta, as the majority intentionally took up, discussed, and decided this issue in response to the dissent. *Malone,* 217 Wis. 2d at 754 (citing *State v. Taylor,* 205 Wis. 2d 664, 670, 556 N.W.2d 779 (Ct. App. 1996)). As the *Malone* court noted, this question was germane to the controversy in *Gonzales,* because the case was before the court on a motion to dismiss and had the majority of the court adopted the dissent's position, it would have been necessary to sustain the complaint. *Malone,* 217 Wis. 2d at 754.

¶ 45. We do agree with the Smaxwells that the language *Gonzales* utilized in reference to the defendant's "duty" is outdated. As noted *supra,* in Wisconsin "all persons have a duty of reasonable care to refrain from those acts that unreasonably threaten the safety of others." *Antwaun A.,* 228 Wis. 2d at 55 (citing *Klassa v. Milwaukee Gas Light Co.,* 273 Wis. 176, 77 N.W.2d 397 (1956)). *See also Gritzner,* 235 Wis. 2d 781,

¶ 20 ("At the very least, every person is subject to a duty to exercise ordinary care in all of his or her activities."). Thus, the decision to preclude liability should normally be based on public policy, rather than the notion of duty. *Id.*, ¶ 24.

¶ 46. Yet, the *Gonzales* court's choice of words does not diminish the significance of the decision. The *Gonzales* court opined that a landlord should not become the insurer for the acts of his tenant simply by virtue of owning the premises. *Gonzales,* 68 Wis. 2d at 158. This sentiment, no doubt, was based on the fact that common-law liability for the acts of dogs was premised on ownership and control over the animal. However, the concern that landlords should not become insurers for their tenants' acts is not premised on a question of duty; rather, it is a policy decision that only those who have dominion or exercise control over an animal should be liable for its injuries.[10] As the *Malone* court noted, limiting the liability of landlords to those who exercise control or dominion[11] over dogs—owners

---

[10] The common law provides that an owner or keeper of a dog breaches his duty of care when he fails to restrain or control the animal. *See* Wis-JI Civil 1391.

[11] Case law has established that "dominion over a dog" is synonymous with control and custody over the dog, and whether one exercises "dominion over a dog" is relevant to an individual's status as a "keeper" of the dog. Thus:

> It is apparent that the keeper of a dog may or may not be the owner of the dog. Where the keeper is not the owner, it may be assumed, as a general proposition, that the dominion or authority of the keeper over the dog is a limited one, subject to be terminated at any time by the owner. In the absence of special circumstances, *the owner may terminate the dominion of the keeper over the dog at any time and remove the dog from the custody of the keeper.* The moment that is done, the dual authority theretofore exercised over

and keepers—" 'promotes the salutary policy of placing responsibility where it belongs, rather than fostering a

> the dog by the owner and the keeper is merged in the owner, and at that very moment the keeper's rights and responsibilities concerning the dog are at an end.

*Janssen v. Voss,* 189 Wis. 222, 224, 207 N.W. 279 (1926) (emphasis added). In other words, once the individual ceases to exercise dominion over the dog, that is, once he ceases to have custody and control of the dog, the individual is no longer a "keeper." *See also Black's Law Dictionary* 502 (7th ed. 1999)(defining "dominion" as "[c]ontrol; possession").

The *Janssen* court defined "keeper" as "one 'who keeps, one who watches, guards, etc.; one having custody.' " *Janssen,* 189 Wis. at 224 (citation omitted). Another authority has defined "keeping" as follows: " 'Keeping' has a proprietary aspect, and is often defined as caring for, or having custody or control of the animal." Danny R. Veilleux, Annotation, *Landlord's Liability to Third Person for Injury Resulting From Attack on Leased Premises by Dangerous or Vicious Animal Kept by Tenant,* 87 A.L.R. 4th 1004, 1015 (1991). This definition comports with how Wisconsin courts have defined "keeper" for purposes of the "dog bite statute." *See* Wis. Stat. §§ 174.001(5) & 174.02. For example, this court in *Armstrong v. Milwaukee Mut. Ins. Co.,* 202 Wis. 2d 258, 267, 549 N.W.2d 723 (1996), relying on *Janssen,* 189 Wis. 2d at 224, held that to be a keeper "the person in question must exercise some measure of custody, care or control over the dog."

In any event, "*the Smaxwells completely agree that Thompson didn't actually do anything to exercise control or dominion over the dogs.*" Pet'r Reply Br. at 5 (emphasis added). "All of the parties agree that Thompson did not exercise any control over these animals." Pet'r Br. at 11. The circuit court specifically noted in its decision for summary judgment that "Thompson took no active role in caring for the dogs." Both the circuit court and court of appeals precluded liability here based on the common-law rule that only owners and keepers of dogs may be liable for injuries caused by the dogs. The Smaxwells have not

search for a defendant whose affluence is more apparent than his culpability.' " *Malone,* 217 Wis. 2d at 767 (quoting *Clemmons v. Fidler,* 791 P.2d 257, 260 (Wash. Ct. App. 1990)).[12] The heart of this sentiment is a policy determination, not an evaluation of duty.

¶ 47. Framing the issue in modern parlance, we conclude that allowing recovery against landowners or landlords who are neither the owners nor keepers of dogs—that is, landowners or landlords who do not have control over or custody of dogs—causing injury to someone on or around their property would simply have no sensible or just stopping point.[13] "When analyzing a

once contended that Thompson was a "keeper" of Bayard's dogs. Indeed, the Smaxwells readily admit that the lack of any control or dominion over Bayard's dogs on the part of Thompson forms "the very basis for the Smaxwells' negligence claims." Pet'r Reply Br. at 5–6.

[12] We note that in *Malone,* 217 Wis. 2d at 750, the plaintiff was injured by a dog owned by the defendant's tenant in a driveway adjacent to the defendant's property.

[13] Contrary to what the dissent asserts, we do not avoid a fact intensive inquiry in making our public policy determination. Dissent, ¶ 74. The key facts, which are undisputed, are that Thompson did not have custody of Bayard's dogs and did not control the animals. In short, she was not an owner or keeper of the animal. We do not employ a blanket limitation as the dissent suggests. *Id.* Rather, we conclude that allowing liability where the landlord/landowner does not have custody of or control over the dog causing injury—that is, where the defendant is neither the owner or keeper of the dog—would enter a field that has no sensible or just stopping point. The determination of whether a landowner or landlord actually had custody or control over the dog at the time of the injury will usually be a jury question. However, here the parties agree that Thompson did not have custody over Bayard's dogs and did not exercise control over them.

311

cause of action under the sixth factor, we must determine if there will be a sensible point at which a line can be drawn if liability is imposed in the present case. *This analysis presupposes that we anticipate the extent of liability in future cases." Stephenson,* 251 Wis. 2d 171, ¶ 50 n.6 (emphasis added)(internal citation omitted).[14] Thus, regardless of the egregiousness of the facts of the case before us, we must contemplate less egregious circumstances under which liability may be imposed.

¶ 48. Allowing recovery against landowners or landlords who are neither the owners nor keepers of dogs under general negligence principles would have profound consequences regarding both landowner and landlord liability. To begin with, exposing landowners to such liability would essentially force them to fence in their property. Imagine a homeowner whose neighbor allows his dog to run at large. The dog often comes onto the homeowner's property and the homeowner complains to the neighbor on several occasions, but to no avail. One day the homeowner has guests over and, unbeknownst to him, his neighbor's dog again enters upon his land and bites his guest. Under the Smaxwells' proposed rule, this homeowner could be potentially liable.

¶ 49. Indeed, the Smaxwells' brief in opposition to the defendants' motions for summary judgment in the circuit court opens with the following statement: "The time has come for Wisconsin Courts to recognize that dog owners should not be the only parties responsible for protecting citizens from the risks posed by known dangerous animals. Landlords, *neighbors* . . . can all

---

[14] Essentially, we conclude that were we to allow liability in the present case under general negligence principles, we would expose landowners to liability in cases that "involve the wanderings of a run-of-the-mill neighborhood dog." Dissent, ¶ 75.

have a duty to help protect others from known dangerous animals." (Emphasis added.) The problem is that there simply would be no just stopping point to liability were we to accept the Smaxwells' proposed rule. When pressed at oral argument as to where liability for landowners would end, counsel for the Smaxwells could not identify any such point, as there would always be a jury question as to whether the landowner knew or should have known that a known dangerous dog was on his premises. Even if the landowner did warn his guests of a known dangerous animal on his property, there would always be a jury question as to whether the landowner's actions satisfied the duty of ordinary care under the specific circumstances. In short, there is nothing a landowner could do, short of erecting a fence around his property, to ensure that he would not be exposed to liability for injuries caused by a dog that he does not own or keep.

¶ 50. That landowners would be forced to fence in their property is evident from the Michigan court of appeals decision relied upon by *Pattermann* when it summarily concluded that landowners could be liable for the injurious acts of nonowned dogs on the property. *Pattermann,* 173 Wis. 2d at 151. In *Klimek,* the plaintiff and her mother were social guests at the defendant's home when the plaintiff was bitten by a neighbor's dog that was loose and unsupervised. *Klimek,* 352 N.W.2d at 363. The complaint alleged that the defendant knew the dog was loose and had previously bitten someone. *Id.* In holding that the complaint was sufficient to state a cause of action, the court ruled: "a loose, unsupervised and dangerous dog either on defendant's land or *in close proximity to defendant's land without any obstacle to prevent it from entering defendant's land* is a 'condition on the land[.]' " *Id.* (emphasis added) (citation omitted).

¶ 51. Moreover, allowing such liability would conflict with the legislative policy enacted in Wis. Stat. § 174.02, which imposes strict liability for injuries caused by a dog.[15] Under the statute, liability is limited to owners, a category that includes keepers and harborers. Wis. Stat. §§ 174.001(5) & 174.02(1).[16] The statute states that the penalties imposed therein "are in addition to any other liability imposed on the *owner* of a dog." Wis. Stat. § 174.02(2)(c) (emphasis added).

¶ 52. In addition, exposing landlords to liability would have similar consequences. While it may seem reasonable to impute knowledge of a tenant's vicious dog to a landlord who rents a duplex or a relatively small converted motel, many urban landlords rent multiunit apartment complexes to dozens, if not hundreds, of tenants. However, a plaintiff injured by a tenant's dog could always make the argument that a landlord should have known of the presence of the tenant's dog or should have known of its dangerous propensities. Charging these landlords with constructive knowledge of the propensities and behavioral history of each tenant's dog and exposing them to liability would have drastic results. As the *Malone* court explained, subjecting landlords who are neither owners nor keepers of dogs to liability would result in individuals who do not own their own homes being unable to own dogs: "Landlords and their insurance carriers

---

[15] "[I]t is also appropriate to look at the [public policy] factors in light of relevant legislative enactments." *Stephenson v. Universal Metrics, Inc.*, 2002 WI 30, ¶ 43, 251 Wis. 2d 171, 641 N.W.2d 158.

[16] For the purposes of chapter 174, " 'Owner' includes any person who owns, harbors, or keeps a dog." Wis. Stat. § 174.001(5).

would be reluctant to allow tenants to keep any dogs for fear of liability . . . . Such a development would deprive those who are unable to afford their own homes of the many positive benefits of dog ownership." *Malone,* 217 Wis. 2d at 766–67.

¶ 53. Finally, as one authority has noted, in general, "[t]he purpose of bringing an action against a party who is neither the owner nor the keeper of the dog is primarily related to the need for the plaintiff to reach a deep pocket . . . ." 2 Am. Jur. Proof of Facts 3d *Landlord's Liability for Injury By Tenant's Dog* 393, 399 (1988). We agree with the court of appeals' sentiment in *Malone* that limiting the liability of landlords when they are neither owners nor keepers of dogs causing injury on or around their property fosters the sound policy of ensuring that liability is placed upon the person with whom it belongs rather than promoting the practice of seeking out the defendant with the most affluence. *Malone,* 217 Wis. 2d at 767.[17]

¶ 54. Therefore, we conclude, based on public policy factors, that common-law liability of landowners and landlords for negligence associated with injuries caused by dogs is limited to situations where the landowner or landlord is also the owner or keeper of the dog causing injury.[18]

---

[17] Interestingly, the dissent agrees that Thompson should not be responsible for the conduct of dogs she neither owns nor keeps, but nevertheless would allow liability in this case. Dissent, ¶¶ 57, 81.

[18] We note that we do not create a blanket rule that only owners and keepers of dogs are liable in negligence for injuries caused by dogs. We merely hold a landlord or landowner may not be liable in his capacity as a landowner or landlord unless he is also the owner or keeper of the dog causing injury.

## VI. CONCLUSION

¶ 55. We hold, based on public policy factors, that common-law liability of landowners and landlords for negligence associated with injuries caused by dogs is limited to situations where the landowner or landlord is also the owner or keeper of the dog causing injury. While the facts of the case before us are egregious, allowing liability in this instance—where the defendant landowner/landlord is neither the owner nor keeper of the dogs causing injury—would enter a field that has no sensible or just stopping point.

¶ 56 *By the Court.*—The decision of the court of appeals is affirmed.

All work on this opinion was completed on or before June 30, 2004. Justice Diane S. Sykes resigned on July 4, 2004.

¶ 57. ANN WALSH BRADLEY, J. (*dissenting*). I agree with the majority that Gloria Thompson cannot be held responsible for the conduct of her tenant. I also agree that she cannot be held responsible for the conduct of the wolf hybrid dogs. Unlike the majority, however, I believe that both the law and public policy support the conclusion that she can be held responsible for her *own* conduct. Accordingly, I respectfully dissent.

¶ 58. The facts of this case are troublesome. On June 15, 1999, three-year-old Tatum Smaxwell was attacked by three wolf hybrids. That morning, Tatum, her mother, and her aunt, were visiting her grandmother's home. The three adults were inside and Tatum was allowed to go outside with her five-year-old cousin Nick, who offered to watch her.

¶ 59. After a short time, Nick came running back into the house, screaming that the dogs were hurting Tatum. Three of the wolf hybrids, each weighing ap-

proximately 75 pounds, were on top of Tatum attacking her. The adults succeeded in getting Tatum away from the dogs, but not before she sustained serious injury.[1]

¶ 60. The assault took place on property that Thompson owned and on which she resided. She also owned the adjacent lot that Melva Bayard, the dogs' owner, used for a wolf hybrid breeding enterprise. Thompson let Bayard kennel the dogs there without charging her any rent for the use of that property.

¶ 61. Prior to the attack, there had been more than 70 complaints from neighbors about Bayard's dogs. Many of the complaints expressed fear over the threatening nature of the dogs and concern over the dogs being allowed to run at large.

¶ 62. Although Thompson did not know the exact number of dogs kept on the property, she was aware of the complaints and knew that several of the dogs were wolf hybrids. Thompson was also aware that law enforcement personnel had made several visits concerning the dogs, and that one of the dogs had bitten a police officer.

¶ 63. Thompson received a citation in connection with the dogs in the mid-1990s. The record reflects that the tenant, Bayard, received a number of citations regarding the dogs. Many of the citations she received involved not maintaining a proper kennel and allowing the dogs to run at large.

¶ 64. The majority concedes that the facts of this case are egregious. Majority op., ¶ 2. Nevertheless, it

---

[1] The complaint alleges that as a result of being mauled by the wolf hybrids, Tatum sustained injuries as follows:

[M]ultiple bites to her face and body, an open wound to her cheek, and [sic] open wound to her forehead and eyebrow, open wounds to her face, neck, hip, thigh, and back, and a contusion to her eyelid and periocular and lacera eyelid fold . . . .

317

holds, based on public policy factors, that common-law liability of landowners and landlords for negligence associated with injuries caused by dogs is limited to situations where the landowner or landlord is also the owner or keeper of the dog causing injury. *Id.* Contrary to the majority, I would not immunize Thompson from responsibility for her own conduct.

¶ 65. As the majority correctly recognizes, Thompson, as a landowner, owed a general duty to exercise ordinary care to all those who legally came upon her property. *Id.,* ¶ 35. Holding landowners responsible for their own conduct is deeply embedded in our common law.

¶ 66. In *Antoniewicz v. Reszczynski,* 70 Wis. 2d 836, 856–57, 236 N.W.2d 1 (1975), this court abolished some of the common-law immunities available to landowners. There, the plaintiff had gone to the home of the defendant to give the defendant's daughter a ride. *Id.* at 840. While at the residence, he slipped on some ice, which was known to the defendant but unknown to the plaintiff. *Id.* The defendant maintained that he owed no duty to warn the plaintiff of hidden dangers because the plaintiff was a licensee. *Id.*

¶ 67. The circuit court in *Antoniewicz* determined that, although the existing law precluded the plaintiff from recovery, that law was archaic and had no rational basis for denying liability. *Id.* at 839. This court agreed, concluding that the required duty of the land occupier be one of ordinary care under the circumstances. *Id.* It explained:

> The duty toward all persons who come upon property with the consent of the occupier will be that of ordinary care. By such standard of ordinary care, we mean the standard that is used in all other negligence cases in

Wisconsin. . . . Under that test, as we have repeatedly stated, negligence is to be determined by ascertaining whether the defendant's exercise of care foreseeably created an unreasonable risk to others.

*Id.* at 857.

¶ 68. In *Shannon v. Shannon,* 150 Wis. 2d. 434, 443, 442 N.W.2d 25 (1989), this court extended the *Antoniewicz* framework beyond the physical premises. The circuit court had concluded that without a showing that the plaintiff's injury was related to a defect or condition on the defendants' property, the defendants were entitled to summary judgment. *Id.* at 442. This court disagreed, observing that the duty of a landowner was not limited to defects or conditions on the premises:

> Contrary to the circuit court's conclusion, the duty of the owner or possessor of land toward persons who come upon property with the consent of the owner or possessor does not relate solely to defects or conditions which may be on such premises. Rather, the duty of an owner or possessor of land toward all persons who come upon property with the consent of the owner or occupier is that of ordinary care.

*Id.* at 443.

¶ 69. Accordingly, in Wisconsin, a landowner's duty to exercise reasonable care is not limited to defects in or conditions on the physical premises. Rather, a landowner must always use ordinary care under the existing circumstances unless specifically limited by law. Applying this principle to the facts of this case, I conclude that summary judgment was erroneously granted on the issue of Thompson's common-law negligence.

¶ 70. Here, Thompson had a duty to maintain her property in a reasonably safe condition and protect

guests on her property from unreasonable risk of harm. She knew about the dangerous wolf hybrids and that they were periodically running at large on her property. Moreover, it had become clear that Bayard was not going to take action to control her dogs. Yet, Thompson did nothing to protect her three-year-old granddaughter from harm.

¶ 71. I believe that a jury could determine that it was reasonably foreseeable that her failure to act would cause harm to her grandchild. Thus, summary judgment should not have been granted. The question of negligence should have gone to a jury.

¶ 72. The majority, however, does not allow the case to go to a jury. Instead, it assumes negligence and precludes liability on the basis of public policy. Majority op., ¶ 39. The majority reasons that allowing liability where the landowner or landlord is neither the owner nor keeper of the dogs causing injury would enter a field that has no sensible or just stopping point. *Id.,* ¶ 2.

¶ 73. I conclude that the majority errs in employing public policy considerations to arrive at its blanket rule of immunity from liability. Properly applied, public policy considerations should not limit liability here, but rather public policy should encourage holding landowners responsible for their own acts of negligence.

¶ 74. Limitation of liability based on public policy is a fact-intensive inquiry. A variation in the facts can render a different public policy conclusion. Yet, the majority employs a blanket limitation, which by definition eschews the fact-intensive inquiry that normally attends the limitation of liability analysis.

¶ 75. I am not persuaded by the majority's fear that there would be no just stopping point to liability were Smaxwell to prevail. The majority contends that exposing landowners to such liability would essentially

force all landowners to fence in their property. *Id.,* ¶ 48. This concern is overstated. This case did not involve the wanderings of a run-of-the-mill neighborhood dog. Rather, this involved a unique danger, of which Thompson was aware. It emanated from within the confines of the property where she resided.

¶ 76. There were a number of measures Thompson could have taken to protect others short of erecting a fence to enclose her entire property. For example, she could have required her grandchildren to play in her already fenced-in backyard. She could have evicted Bayard from the premises for her repeated citations. She could have prohibited such a large kennel enterprise in the first place. Finally, she could have warned her guests against allowing children to play outside unattended.

¶ 77. Similarly, I am not persuaded of the need for a blanket rule of immunity based on the majority's other hypotheticals. I am mindful that it may be necessary to preclude liability in some cases on grounds of public policy. For instance, preclusion based on public policy may be proper in the case of a landlord renting multiunit apartment complexes to hundreds of tenants. *Id.,* ¶ 52. Likewise, public policy may be used in appropriate cases to preclude a landowner's liability as a neighbor. *Id.,* ¶ 48.[2] In some cases, to impose liability

---

[2] This court has grappled with line drawing determinations in other contexts involving the liability of a neighbor. In *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.,* 2002 WI 80, 254 Wis. 2d 77, 646 N.W.2d 777, we were required to determine upon which, if any, of several parties liability might be imposed. "Because responsibility is strictly based on the facts of this case . . .," we rejected the argument that no sensible or just stopping point could be found. *Id.,* ¶ 51. Indeed, we later noted that public policy considerations precluded the imposition of

on the landlord could place too unreasonable a burden. But those are not the facts here.

¶ 78. This is a case about a woman who knowingly permitted on her property a poorly-managed wolf hybrid breeding enterprise. To hold Thompson liable need not result in the parade of horribles the majority invokes.

¶ 79. A proper public policy analysis in this case would not result in Thompson fencing in her property. Rather, it would result in Thompson taking the necessary measures to prevent dangerous wolf hybrids from running at large on her property when her young grandchildren are outside, unsupervised, at play. The majority's blanket rule would deter rather than encourage responsible behavior.

¶ 80. We have previously stated that "[t]he cases in which a causally negligent tort-feasor has been relieved of liability are infrequent and present unusual and extreme considerations." *Stewart v. Wulf,* 85 Wis. 2d 461, 479, 271 N.W.2d 79 (1978). This case does not fit into that narrow category. Although we have a list of factors upon which we preclude liability, the decision to impose liability requires that a court exercise fair judgment given the unique circumstance of each case.

¶ 81. I conclude that holding Thompson immune for negligence associated with her own conduct goes against public policy. This decision encourages landowners to turn a blind eye toward the presence of dangerous wolf hybrids on their property.[3] In doing

liability on a neighbor in that case, who merely had notice of the dangerous condition. *Id.,* ¶ 63, n. 34.

[3] Counsel for Thompson acknowledged at oral argument that the issue here is a narrow one and applies to dogs only—not to dangerous animals in general.

nothing, a reasonable jury could conclude that Thompson failed to exercise ordinary care under the circumstances.

¶ 82. In sum, this case is not about holding Thompson responsible for the conduct of her tenant or her tenant's wolf hybrids. Rather, it is about holding Thompson responsible for her own conduct. Because I believe that both the law and public policy support Thompson's exposure to liability, I respectfully dissent.

¶ 83. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this opinion.